FREDERICK P. JAMES, Respondent, *v.* JAMES A. COWING, Impleaded, etc., Appellant.

By the terms of a mortgage executed by the W. S. E. P. R. Co., defendant C., as trustee for bondholders, was authorized, in case of default, to commence foreclosure on request of holders of bonds to a certain amount; also, on written request of a majority of the bondholders he was authorized to purchase on foreclosure sale, and to take measures to organize a new company for the benefit of the bondholders, upon such terms as a majority of them should direct, to which company he should convey the property. A default having occurred, and the proper request having been made, C. commenced foreclosure. Before sale plaintiff herein, as a bondholder, presented a petition asking for a stay of proceedings. An order was entered in the action, to which plaintiff's counsel assented, by which C. was directed to bid " for the benefit of all the holders of the bonds," up to $450,000. C. bid $750,000, and took the title to the property. No request was made by a majority of the bondholders for C.

to make the purchase. In an action brought by plaintiff to recover the amount of his bonds, *held*, that as against the plaintiff, C. had the right, and it was his duty to make the purchase, and as no restraint as to price was put upon him by the mortgage, and as the order did not forbid the offer of a higher price than that specified, but simply fixed the minimum price at which he should allow others to purchase, he had the right in his discretion to bid over that sum.

C., after such purchase, upon request of a majority of the bondholders, advertised the property for sale and sold it at public auction to the N. Y. E. R. Co. for $100,000. *Held*, that such sale was unlawful; that the request of a majority of the bondholders gave no authority to make it, so long as any bondholder dissented and insisted upon the performance of the trust; that if for any reason the due execution of the trust seemed to the trustee to be impossible, he should have sought the direction of the court.

The bonds secured by the mortgage amounted to $750,000, the N. Y. E. R. R. Co., the purchaser of the property, had a capital stock of $10,000,000, its property was much more than that covered by the mortgage, and its membership was much greater in number than the bondholders. *Held*, that said corporation could not be considered as substantially the organization provided for by the mortgage, although a majority of the bondholders had gone into it, and had determined that it was "for their use and benefit" that the mortgaged property should be transferred.

Also, *held*, that plaintiff's measure of damages was the value of his proportional part of the property so wrongfully sold.

At about the time of plaintiff's intervention in the foreclosure proceedings he brought an action against the mortgagor and defendant C. to set aside and cancel another mortgage, and to enjoin foreclosure proceedings thereon; that action was settled before the sale by C. by a stipulation duly signed, which provided that plaintiff was " to have leave to unite with the other bondholders on like terms in *the new organization*, and agrees to do so as to all bonds which he absolutely owns." The scheme for the organization, and the articles of association of the N. Y. E. R. R. Co. had been prepared before the signing of the stipulation, and the defendant claimed on trial of this action that this was "the new organization" referred to therein; the evidence was conflicting on this point. The court was requested by defendant to find, in substance, that by the words "new organization" the organization so contemplated was intended. The court declined so to find, " on the ground that the facts and conclusions sought are not necessary to sustain the decision rendered." *Held*.error, that the question was material; that although a refusal to find as requested might have been justified by the evidence, as this was not the ground taken, the decision could not be considered as such refusal; that defendant was entitled to have his request granted or refused without qualification.

Under the provision of the Code of Civil Procedure (§ 993), which provides that a refusal to make any finding whatever upon a question of fact, on a trial by the court or a referee, where a request was seasonably made, is a ruling upon a question of law, a refusal of a request to find a fact, on the ground that the fact is immaterial, presents a question of law, and if the fact be material the ruling is error, although the fact be not conclusively proved, and the evidence as to it is conflicting.

(Argued October 8, 1880; decided November 9, 1880.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury. (Reported below, 17 Hun, 256.)

This action was brought by plaintiff as the holder of certain bonds issued by the West Side Elevated Patent Railway Company, to recover damages caused by an alleged breach of trust on the part of the defendant Cowing, trustee under a mortgage given to secure said bonds.

The material facts appear in the opinion.

*David Dudley Field & Charles Edward Tracy* for appellant. Purchasers only can organize a new corporation. (Laws 1864, chap. 282; 3 Edm. 640–641, § 1.) By the deed to him the appellant took simply the legal title with power of sale. (Laws 1857, chap. 444; 3 Edm. 650, § 1; 1 R. S. 728, § 55.) If appellant was in error in the administration of his trust, and bad faith was not shown, there was no reason for holding him personally liable, particularly when the court below decided that there was no effectual alienation of the trust fund. (*Rhaw* v. *R. R. Co.*, 100 U. S. 606.) There was a mistrial of the action in the refusal of the trial judge to decide what was the "new organization" described in the stipulation or agreement annexed to the complaint. (*Andrews* v. *Raymond*, 58 N. Y. 123; *Smith* v. *Glens Falls Ins. Co.*, 62 id. 85; *People* v. *Church*, 2 Lans. 465; *Becks* v. *Sheldon*, 48 N. Y. 369.)

*Abram Wakeman* for respondent. The appellant, in order to make his exception to the refusal to find as requested avail-

able on this appeal, should have shown not only that evidence was given proving the fact, but that there was no evidence tending to the contrary conclusion. (*Andrews* v. *Raymond*, 58 N. Y. 676; *Becks* v. *Sheldon*, 48 id. 369.) To make the exception to the refusal to find any of the proposed additional findings available, the facts asked to be found must be material to the issues in the case and must be conclusively proved. (*Smith* v. *Glens Falls Ins. Co.*, 62 N. Y. 87.)

FINCH, J. The defendant was trustee of a railroad mortgage made by the "West Side Elevated Patent Railway Company" to secure its bonds of $500, each, issued to the amount of $750,000. By the terms of the mortgage the trustee was authorized, in case of default, to institute proceedings for foreclosure upon the written request of holders of the bonds to the amount of $100,000. A default occurred; the proper request was made; and the trustee lawfully, and in the performance of his duty, commenced a foreclosure. The mortgage contained further provisions defining the authority of the trustee in case of a sale, which were, in substance, that, upon the written request of a majority of the bondholders, he should be authorized to purchase the mortgaged property at the sale for the benefit of the bondholders, and thereupon take such measures as seemed necessary to organize a new company or corporation for the use and benefit of such bond holders, in such manner and upon such terms and conditions as a majority should, in writing, direct, and to which corporation so organized he should convey the property purchased by him at the foreclosure sale. Before the day of sale was reached and action upon these provisions of the mortgage became necessary the plaintiff intervened. Claiming to be the owner of some of the bonds, and that his rights were imperiled by the foreclosure, he presented a petition asking for a stay of proceedings. After some negotiation an order was entered in the action, to which his counsel assented, by the terms of which the trustee was directed upon the sale to bid "for the benefit of *all* the holders of the bonds secured by

the mortgage sought to be foreclosed up to the sum of $450,-000." Although the duty of the trustee to purchase at the sale was, by the terms of the mortgage, dependent upon the written request to that effect of a majority of the bondholders, and no such request seems to have been made, yet he must be held to have had that right, and to have been bound to perform that duty as against the present plaintiff, through whose intervention and with whose consent the order to purchase was made. Since, by the terms of the mortgage, no restraint as to price was put upon the trustee in case he should purchase, but the amount of his bid was left to his own discretion unless otherwise lawfully controlled, we must hold that the only restraint upon or limitation of that discretion was contained in the order of the court referred to. That simply required him to bid "up to" $450,000. It did not forbid the offer of a higher price if, in the exercise of his judgment as trustee, he should deem it best for the interest of the bondholders to bid a larger sum. The minimum price at which he should allow others to buy was indeed fixed by the order, but the amount beyond that at which he should buy was still left to his judgment and discretion.

He did in fact bid $750,000, and took the title to the property covered by the mortgage, and held it in trust for the benefit of the bondholders. Of course he did not actually pay on the one hand, or receive on the other, the $750,000. Whatever may have been the form of the receipts in the foreclosure proceedings, the trustee did not in fact receive the money. The transaction simply changed the bondholders from the position of creditors of the company, to that of actual owners of the property through the perfected title of their trustee.

Thus far the action of defendant Cowing was blameless. His next step, however, was a violation of the provisions of the mortgage. He had two duties remaining plainly imposed upon him by the terms of his trust: First, to take measures to organize a new company or corporation " for the benefit of the holders of the bonds secured by the mortgage," and, second, to re-convey the property so purchased by him to such new corpora-

tion. Instead of so doing, he advertised the property for sale at public auction, and for the sum of $100,000, being the highest bid at the sale, conveyed it to the "New York Elevated Railroad Company." This he had no right to do. His sole authority as trustee, by the very terms of his trust, was to form the bondholders into a corporation and convey the property to them. He had no right to sell at all.

A very ingenious and forcible argument was made on behalf of the appellant in justification of this act of the trustee. It was urged that, not having purchased upon the written request of the holders of a majority of the bonds, but only under the order of the court, the purchase by the trustee was not for the purposes of the mortgage, but only for the benefit of the bondholders. The order, however, was made in the pending action for the foreclosure of the mortgage. It was made upon the intervention of a bondholder seeking directions to the trustee for the proper performance of his trust. It must, therefore, be construed as a direction to the trustee, as such, and guiding his action under the trusts of the mortgage. Whether properly made, because of the absence of the written request, cannot be a question here. Both parties before us assented to a purchase by the trustee.

It is again said that the new corporation, referred to in the mortgage, was to be organized " upon such terms, conditions and limitations, and in such manner as the holders of a majority of said outstanding bonds" should direct or request in writing ; and since such majority of bondholders requested a sale, such a reorganization as the mortgage called for was, in fact, impossible of execution. But the request for a sale gave no authority to make it, at least, so long as a single bondholder dissented and insisted upon the performance of the trust according to its terms. Nor can we say that such performance was impossible. If the trustee had refused to sell, as beyond his authority, we should presume that those who sought a sale would concur in the reorganization provided for in the mortgage, rather than the contrary.

But if for this reason, or for any other, the due execution of

his trust seemed to the trustee impossible, he should have sought the direction of the court, so that all parties could have been heard, and the rights of all protected. To admit such a discretion for a trustee as is here claimed might in many cases make him independent and despotic.

It is claimed, also, that the "New York Elevated Railroad Company," which became the purchaser from the trustee, was substantially the organization provided for in the mortgage, because a majority of the bondholders had gone into it and had determined that it was "for their use and benefit" that the mortgaged property should be transferred to it. Without discussing the character or origin of that corporation, or considering the facts presented to us as establishing that its object and aim was to do a wrong to the bondholders under the first mortgage and sacrifice their priority to subsequent and questionable liens, it is enough to say that such corporation in no sense answered the requirements of the mortgage, or the purposes of the trust. If those purposes had been fully carried out, the property mortgaged would have gone to the bondholders. Each one of them would have had his proportionate part of the property represented by its equivalent of stock. But the capital of the "New York Elevated Railroad Company" was $10,000,000, and its property much more than that covered by the mortgage of $750,000. Its membership, too, went far beyond the bondholders under that mortgage. It is easy to see that the position of plaintiff in that company might well be something entirely and destructively different from his situation in the new corporation, contemplated by the mortgage. That a majority of the bondholders did not object does not cure the objection of plaintiff. As to him the trustee violated his duty and is responsible for the damages.

But what are those damages? The judgment appealed from has awarded to the plaintiff his proportionate part of $750,000. If this conclusion stood solely upon the finding that the trustee actually received that amount, we could not sustain it. But it does not necessarily rest upon that. The measure of damages is the value of plaintiff's proportional part of the

property wrongfully sold. That value is found by the Special Term to be more than $750,000. The finding is that "the value of the said property in the hands of the said trustee, and of the New York Elevated Railroad Company was, and is an amount more than sufficient to pay all the bonds covered by said first mortgage together with the interest, costs and expenses thereon." To this finding the defendant Cowing excepts, and it is insisted that there is no evidence to sustain it; that as the property was sold at public auction and brought only $100,000, that sum should be taken as the basis for computing the damages. But there is other evidence in the case. The parties themselves, by their consent to the order made in the foreclosure, fixed upon $450,000 as the minimum valuation. A witness who was the original projector of this railway; who was its first manager and chief engineer; under whose direction the road was built; and who claims to know the value of such property, testifies that it was worth $950,000. On cross-examination he gives the details of its cost and shows a very great familiarity with the subject. Add to this the fact that on the foreclosure of a third mortgage the New York Elevated Railroad Company paid $230,000 for the same property with the lien of the first mortgage upon it, but including the franchise north of Thirtieth street, and it is impossible to say that there is no evidence to support the finding. Assuming it, therefore, to be correct there was no error in the amount of damages awarded.

But there is another difficulty in the case. At about the date of the plaintiff's intervention in the foreclosure proceedings, he brought an action in the New York Common Pleas against the company and the defendant Cowing, the purpose of which was to set aside and cancel the third mortgage and enjoin the foreclosure proceedings thereon. That action was settled on the 10th of November, 1871, nearly two months before the unauthorized sale by the trustee of the mortgaged property, by a stipulation duly signed which provided as follows, viz.: "This suit is settled by the parties as follows: This action is to be discontinued without costs or damages as against

any party. The plaintiff is to have leave to unite with the other bondholders on like terms in *the* new organization, and *agrees* to do so as to all bonds which he absolutely owns." While it is true that the New York Elevated Railroad Company had not at this date been actually incorporated, yet the scheme for its organization and the articles of association had been prepared earlier than the stipulation above recited. The defendant claimed on the trial that "the new organization" referred to in the stipulation was the organization then in progress, which afterward ripened into the New York Elevated Railroad Company. The plaintiff claimed that the phrase referred to a new organization of the first mortgage bondholders under the terms of the trust. The trial judge did not decide this question. He was requested to do so inasmuch as there was some conflict of evidence on the subject. He was asked to find "that by the words 'new organization,' the parties to said stipulation intended the organization then contemplated by the association of holders of bonds and other obligations of said West Side, etc., Railway Company, represented by the parties defendant in said action in the Court of Common Pleas." The learned judge declined to find as requested, "on the ground that the facts and conclusions sought are not necessary to sustain the decision rendered." To this refusal there was an exception. We think the defendant had a right to a finding on this question and that it was material. If there had been simply a refusal it would perhaps have been justified by the evidence. But that is not the ground taken. We cannot say how the learned judge would have found if he had passed on the question. He declined to do so substantially because it was immaterial. We cannot so consider it. If he had found as defendant requested, and as he might have done for all we know to the contrary, a very grave question would have been presented. If the plaintiff did in truth, agree before the trustee made his sale, to carry his bonds into the elevated railroad company then being organized, and take its stock in lieu of his bonds, how can he complain of the trustee for transferring the property to that organization? How can

he insist that another and different one in which he could have no possible interest should have been framed by the trustee? Why might it not be a waiver of his right to have the terms of the mortgage carried out, or an admission that the trustee had substantially conformed to those terms? It is not necessary to decide now what may not become a practical question. It is, however, evident that the finding sought was material, and the defendant was entitled to have it granted or refused without qualification. The inquiry was not outside of the issue. The plaintiff, in his supplemental points, concedes that to be, " did these words as used refer to the new company provided for in the mortgage, or did they not?" A finding that the words related to the proposed elevated railroad company would answer that question. It would decide that the words did not relate to the new corporation provided for in the mortgage. It is further claimed that the appellant, in order to make his exception to the refusal to find as requested available, should have shown, not only that evidence was given proving the fact, but that there was no evidence tending to a contrary conclusion; that the fact to be found must be material and conclusively proven. That is a correct rule in its proper application. It relates, however, to a case where the refusal amounts to a denial of the fact. It does not apply to a case where the refusal is to find upon the fact at all and neither admits nor denies it. In such case the remedy was, under the former Code, to compel by motion, a finding one way or the other. If the motion was denied upon the ground that the fact sought was immaterial, the correctness of that ruling could be tested on appeal. (*Smith* v. *Glens Falls Ins. Co.*, 62 N. Y. 87.) That remedy was somewhat awkward and inconvenient, and though not abolished, is supplanted by the simpler rule of the Code of Civil Procedure which provides that a refusal to make any finding whatever upon a question of fact, where a request was seasonably made, is a ruling upon a question of law. (§ 993.) The exception we are considering appears by its date to have been made after the new provision took effect, and, therefore, raises the question of the materiality of the finding

sought as perfectly and definitely as if it had been done by the process of a motion. The trial judge not only refused to find upon the fact at all but decided that such finding was unnecessary, and did not leave to inference his conclusion that the fact sought, even if true, was immaterial; and this ruling, under the present practice, raises a question or law. If, indeed, the trial judge had found among his facts that the parties intended by the phrase "the new organization," the corporation contemplated by the mortgage, we should deem the defendant's request immaterial. But there is no such finding. There is none either way. If it be said that it is involved in the learned judge's conclusion, or tacitly assumed by him, the answer is that we do not know; we should be driven to a guess. So far as we do know he held the question to be immaterial and, therefore, refused to decide it. In that respect we cannot agree with him. It seems to us to have been one of the vital questions of fact in the case; likely to dictate the final result; and which has been left undecided in the face of request and exception. For this error we think there should be a new trial.

Judgment reversed, new trial ordered, costs to abide the event.

All concur.

Judgment reversed.