### *In re* STEPHENS' ESTATE.

(*Supreme Court, General Term, Second Department.* May 14, 1888.)

1. EXECUTORS AND ADMINISTRATORS—POWERS AND DUTIES—IMPROPER INVESTMENTS.
   On final accounting of an administrator, it appeared that he had loaned money of the estate upon unimproved land and upon second mortgages, and also to himself directly, and to a firm of which he was a member, causing severe loss to the estate. There were indications that several of the loans were beneficial to the administrator. He testified that decedent's widow was flighty, and had been in the asylum; that decedent's daughter, who was entitled to the remainder of the estate, requested him to put the money, as it came in, in her name; and also assented to his taking second mortgages. The daughter contradicted this testimony. *Held*, that the evidence warranted a finding against the administrator, as his acts were illegal even if authorized by the daughter.

2. SAME—SETTLEMENT AND ACCOUNTING—ALLOWANCE OF ATTORNEY'S FEES.
   On such accounting the administrator presented a claim for legal services which he claimed to have paid to his law partner for consultation and examination of laws before commencing foreclosure suit against a railroad in another state. It appeared that such suit was carried on by attorneys in that state under an agreement that they were to look to the road for their fees. *Held*, that the transaction was unreal in appearance, and the claim properly disallowed.

3. SAME—SETTLEMENT AND ACCOUNTING—RECEIPT OF ASSETS—EVIDENCE.
   On such accounting, the administrator testified that all receipts of interest had been accounted for by him. It appeared that a mortgage due the estate had been paid, but no interest thereon was accounted for. *Held*, that the general statement must yield to the facts proven, which, unexplained, tended to show that the administrator received, or should have received, the money.

4. SAME—PROBATE PRACTICE—INCOMPETENT PERSONS—POWER OF SURROGATE.
   Under Code Civil Proc. N. Y. § 2528, providing that a party may appear in the surrogate's court until he has been judicially declared to be incompetent to protect his own rights, an administrator, on accounting, is not prejudiced by the surrogate's refusal to appoint a guardian for decedent's widow, who was flighty, and had been in an asylum, but who had never been judicially declared incompetent to care for herself, though by section 2527 the surrogate may, in his discretion, act upon information of incapacity with judicial determination, and direct citation to such a person to be served upon some person designated for the purpose.

Appeal from surrogate's court, Kings county.

Appeal by Nathaniel Niles from a surrogate's decree upon his accounting as an administrator of the estate of Chauncey Stephens, deceased, and from the surrogate's orders denying an application for the appointment of a special guardian for Hannah M. Stephens, and denying motion to send case back to referee for additional findings, and for resettlement. The Connecticut Western bonds referred to in the opinion were railroad bonds belonging to the estate. Niles began and carried on foreclosure proceedings in Connecticut against the road, under an agreement with attorneys in that state that they would look for their fees to the road on reorganization. Niles asked to be al-

lowed $350 he claimed to have paid to Marston Niles, his law partner, for legal services, consisting of various consultations with him about the matter, .and in looking up the laws of Connecticut, etc., before beginning the fore-:closure suit.    This claim was disallowed by the referee.    The administrator, Niles, testified that he had accounted for all moneys received by him as inter-est, but his account failed to show the receipt of any interest on the Mostert mortgage from April 1, 1874, to May 1, 1877, when the principal of the mort-gage was admitted to have been paid.    The referee surcharged his account with the amount of such interest.    Code Civil Proc. § 2527, provides that the surrogate may, in his discretion, act upon information of incapacity with ju-dicial determination, and direct citation to one incompetent to manage his own affairs, though not judicially declared to be so, to be served upon some person designated for that purpose.    Id. § 2528 provides that a party may appear in the surrogate's court until he has been judicially declared to be in-competent to protect his own rights.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Marston Niles*, for appellant.    *Charles Lyons, Jr.*, for respondents.

BARNARD, P. J.    Chauncey Stephens died in Brooklyn, in June, 1873, and, :as he left no will, letters of administration were granted by the surrogate of Kings county to Elizabeth S. Miller and Nathaniel Niles.    The deceased left a widow and an only child, Mrs. Miller, and about $75,000 of personal estate.    The appellant, Niles, was a lawyer, and managed the estate entirely, .by the assent of Mrs. Miller.

The investments made by Mr. Niles do not meet the requirements of the law which governs trustees.    He loaned money in New Jersey on unimproved land, and also in the state of New York.    He loaned money on second mort-gage, which was swept away by the foreclosure of the prior mortgages.    He loaned money to himself directly, and to a firm of which he was a member. As a whole, the loss on these investments is so large as to hardly permit a :finding of good faith in making the loans.    Added to this, there are, in several of the loans, indications that the same were beneficial to the administrators, directly or indirectly.    One is met by a defense of usury, and in one the prop-erty, under the foreclosure of a first mortgage, was bought by the adminis-trator personally, with a total loss of the estate loan.    The record is so diffi-cult to account for or to uphold that the real issue in the case is shifted so as to make the loans payments to Mrs. Miller. The explanation made by the appellant is quite as unsatisfactory as the record of the loans.    The appellant :testifies that Mrs. Stephens, who was entitled to one-third of the property, was flighty, and had been in an asylum; that Mrs. Miller told him so, and also :told him that, as she (Mrs. Miller) was the sole heir, she did not wish her mother :informed of the details, and that she requested the appellant "to put the money, .as it came in, in her name."    He then states, "I asked her whether I should :take second mortgages;" and in her reply she said "she thought well of them." .Mr. Niles knew that Mrs. Stephens had a right to one-third of the personal ·estate; and that to divert her inheritance, because she was helpless, was not :the right thing to do.    He knew that such a diversion did not bind Mrs. Ste-:phens.    He also knew that he had no function of investment in any way. The administrator held the legal title to the fund, and could temporarily in-vest it; but the duty imposed on the appellant was one of administration only, and was designed by the law to be ended in 18 months.    Mrs. Miller denies these allegations.    She testifies that she never authorized or directed "any in-vestment in my name," or ever assented to any form of security being taken. If this were all the evidence, the appellant has the weak side of it.    It would have been illegal for the appellant to do the acts he says Mrs. Miller told him to do; and a finding in her favor upon the issue will not be disturbed on ap-peal.    The general facts of the case are against the appellant.    The account

was kept as of the Stephens estate; and he repeatedly informed Mrs. Miller, after his failure, that the Stephens estate was intact, and that the investments made in her name "would be for the advantage of the estate." The letters and accounts support Mrs. Miller. There is not a word in them to show these large payments out of the estate to her, but they all proceed upon the basis of an unimpaired estate. There is not a receipt given by her which supports appellant's theory. They are based upon a receipt of moneys from appellant as administrator. There is not an account of the estate, in the course of the administration, which is brought to Mrs. Miller's attention, in which it can be seen, or even inferred, that any portion of the estate had been paid over to Mrs. Miller beyond income; and, as has been stated, that was received from the estate as income. No amount is paid as interest on a mortgage owned by Mrs. Miller.

The referee properly rejected the claim for services in respect to the Connecticut Western bonds. The appellant paid nothing, but agreed with a Connecticut attorney that he should look for his fees to the road on reorganization, and appellant was to pay a New York attorney, who was the appellant's partner. The transaction is unreal in appearance, and ought not to succeed.

The interest on the Mostert mortgage was properly charged against the appellant. He told Mrs. Miller he wanted to call it in, and lend the money to a firm, William P. Tuttle & Co.,—a firm of brokers of which the appellant was a member. From its date and amount, the interest charged should have been paid. The mortgage was paid, and presumably all arrearages of interest. A general statement that all receipts of interest received by appellant was stated in the account must yield to facts proven, and which, unexplained, tend to show that the administrator (appellant) must have received the money. If he did not receive it, he should have done so.

The appellant proposed to the surrogate's referee 208 proposed findings, which the referee has refused to find, and disallowed. They all, or nearly all, refer to items of evidence, only important as tending to prove the main issue, which was whether the investments were made with Mrs. Miller's assent, or were payments to her. Very many of the requests are in respect to entirely immaterial matters. Some, and not a few of them, have been found by the referee in his two reports; and, upon a careful reading, none, under the rule in *James* v. *Cowing*, 82 N. Y. 449, calls for a reversal. They are "mere items of evidence, not proper subjects for specific findings," according to the rule laid down in *Quincey* v. *Young*, 53 N. Y. 504. The appellant has no grievance in the refusal of the surrogate to appoint a guardian for Mrs. Stephens. A party may appear in the surrogate's court until he has been judicially declared to be incompetent. Sections 2528, Code Civil Proc. The surrogate, it is true, may act upon information of incapacity with judicial determination, and direct mode of service of citation. Section 2527. We have no power to direct the manner in which the case shall be settled. If the proposed findings were inserted, they are not sufficient to reverse any finding made, but the case seems to be settled right. The decree and order should be affirmed, with costs.