Thomas Hennessy, Plaintiff and Appellant, *v.* Alexander Griggs, Jacob S. Eshelman, and Dakota Gas and Fuel Company, Defendants and Respondents.

**1.  Partnership — Corporation — Parol Evidence to Vary Written Agreement.**

Three parties—G., E., and H.—formed a copartnership under the name of "The Dakota Gas & Fuel Company." The copartnership articles provided that the partnership capital should be $50,000—G. to furnish $5,000, E. to furnish $10,000, and H. $10,000—the remaining $25,000 to be held by G., to be by him negotiated, and raised from outside parties; and, further, that all profits should be divided between the parties in proportion to the capital furnished and held by each, and on the basis of a capital of $50,000, and that, as soon as might be, said parties should incorporate under the same name, for the same purposes, and all the partnership effects should be assigned to the corporation; and that the capital stock should be not less than $50,000, and should be held and divided among said parties in the same proportion as the capital of said copartnership. *Held*, (1) that the articles contemplated that the capital to be furnished as specified should be actual capital, and that parol evidence to show that said capital was to be nominal only was properly disregarded; (2) that plaintiff H., having joined with G. and E. and two other parties in executing and filing articles of incorporation, whereby they became a body corporate under the name and for the purposes provided in the copartnership articles, as between said parties, and under the copartnership articles, the existence of the corporation worked *eo instanti* the dissolution of the partnership, and that, although the articles of incorporation provided for five incorporators, instead of three, and fixed the capital stock at $100,000, yet, as H. was one of the incorporators, he is conclusively held to have assented thereto, and cannot be heard to say that the corporation so formed is not the corporation provided for by the copartnership articles, particularly when such changes could in no manner affect his interest in or control over such corporation; (3) that, while H. was a necessary party to a transfer of the firm property to the corporation, yet a transfer thereof by G. and E. cannot, in equity, be avoided by H. because he wrongfully refused to join therein; (4) that, as all the capital stock of the corporation would

belong to the same parties who furnished the firm capital, and in the same proportion, it was competent for said corporation to assess its capital stock for an amount sufficient to pay the debts incurred by the firm in procuring the property that was transferred to the corporation, so long as such assessment was less than the amount that each party was originally required to furnish under the copartnership articles, none of said parties having actually paid in their firm capital, and said parties would not be entitled to said stock without paying such assessment: and plaintiff H. would not be entitled to paid-up non-assessable stock unless he had paid in the full amount as required by the copartnership articles.

(Opinion Filed April 1, 1890.]

*A*PPEAL from district court, Grand Forks county; Hon. C. F. TEMPLETON, Judge.

Action in equity by Thomas Hennessy against Alexander Griggs, Jacob S. Eshelman, and the Dakota Gas & Fuel Company. The decree dismissed plaintiff's complaint, and he appeals.

Bosard & Corliss, R. E. Noyes, W. P. Langdon and P. J. McLaughlin, for the appellant, argued that the corporation formed was not the company contemplated in the articles of partnership; citing, Jones v. Cowing, 82 N. Y. 449; Bellows v. President, etc., 3 Mason, 31; The Georgia Co. v. Casselberry, 43 Ga. 187; White v. Newport Co., 1 Pick. 215; Matthews v. Stanford 17 Ga. 543; Thrasher v. Pike Co. R. R. Co., 25 Ill. 393; Childs v. Smith, 55 Barb. 45.

The transfer of the partnership property to the corporation was not made in manner provided in articles of partnership; the ratification of it by the court was equivalent to decree for specific performance, which should be refused in such a case because it would be unfair if the stock is assessable. Keen v. Hamilton, 4 Peters, 311; Cathcart v. Robinson, 5 id. 264; Jackson v. Ashton, 11 id. 229.

The instruments are too vague to justify a decree tantamount to a decree for specific performance. Stanton v. Miller, 58 N. Y. 192; Shakespeare v. Markham, 72 N. Y. 400; Pomeroy on Spec. Perf. 222.

The plaintiff is not estopped by his conduct, 7 Am. & Eng. Encyc. Law, 12-17; Ins. Co. v. Mowry, 96 U. S. 544; White v. Ashton, 51 N. Y. 280.

The acts of the copartners show that the capital was nominal or to be paid by services, and the circumstances under which the partnership agreement was made should have been taken into consideration. Lindley on Partnership, 408; Bowler v. Gleason, 2 Atl. Rep. 885; Grieb v. Cole, 27 N. W. 579; Foster v. Schmeer, 15 Pac. Rep. 626.

C. Wellington, for the respondent, argued: That there was no latent ambiguity in the contract of partnership, and that, therefore, oral testimony to explain it was inadmissible. Gove v. Gowne, 3 N. E. Rep. 463; Brady v. Cassidy, 6 Cent. Rep. 76; Norton v. Woodruff, 2 N. Y. 153; Giles v. Comstock, 4 ib. 270.

Plaintiff is estopped from demanding non-assessable stock. He induced respondents to believe that he would carry into effect the partnership agreement to organize a corporation; he joined them in the organization of it. Their money is invested on the belief that he would comply with the terms of the contract; the plaintiff does not assert his claim till the assertion will injure them. Simpson v. Pearson, 31 Ind. 1; Horn v. Cole, 51 N. H. 287; Douglas v. Scott, 5 Ohio 195; Morris Canal Co. v. Lewis, 12 N. J. Eq. 323; Chapman v. Chapman, 59 Penn. St. 214; Continental Bank v. Bank, 50 N. Y. 575.

BARTHOLOMEW, J. On November 26, 1886, and as a result of certain parol negotiations theretofore had, the plaintiff, Hennessy, and the defendants Griggs and Eshelman, entered into a written agreement of copartnership, as follows: "This contract of copartnership, made and entered into between Alexander Griggs, J. S. Eshelman, and Thomas Hennessy, all of the city of Grand Forks, county of Grand Forks, and territory of Dakota, witnesseth: That the parties aforesaid have, and by these presents do, enter into and form a copartnership under the name and style of the 'Dakota Gas and Fuel Company.' The principal place of business of said copartnership shall be the city of Grand Forks; and the nature of the business to be transacted shall be the manufacture and sale of gas and coke, also dealing in and selling of fuel of all kinds. The capital of said copartnership shall consist of $50,000—Alexander Griggs to furnish $5,000; Thomas Hennessy, $10,000; and J. S. Eshelman, $10,000; the remaining $25,000 to be held by Griggs, to be by

him negotiated and raised to and from certain persons in St. Paul, Minn. It is further agreed that Alexander Griggs shall be the general manager of said copartnership, and, as such, authorized to bind the same in all business transactions, and sign the name thereof to all contracts within the scope of the aforesaid contemplated business, and in the name of the said copartnership to purchase all necessary real estate whereon to erect suitable buildings and appurtenances for the manufacture of gas and coke, and for storing and selling fuel of all kinds. That the profits, if any, of said copartnership shall be divided *pro rata* according to the capital furnished and held by each member thereof; it being understood and agreed that such division shall be based on a capital of $50,000, and the amount of $25,000 shall be taken into account, to the full amount thereof in making such division. And it is further agreed that the said copartnership, as soon as may be, shall proceed to incorporate under the laws of Dakota, and by the corporate name of Dakota Gas and Fuel Company, for the purposes hereinbefore set forth, and when such incorporation is complete the said copartnership shall assign, transfer, and set over to said incorporation all property, both real and personal, and all its rights, contracts, interests, and accumulations; and, in order to carry the same into effect, the said Griggs and Eshelman and Hennessy are hereby authorized, so far as may be necessary, to make such assignment and transfer in the name of said copartnership. The capital stock shall be at least 500 shares of $100 each, to be held and divided among the parties hereto in the same proportion as the capital of said copartnership. In witness whereof the said parties have hereunto set their hands this 26th day of November, 1886. ALEX. GRIGGS. THOMAS HENNESSY. J. S. ESHELMAN."

Under this agreement, the co-partnership proceeded to obtain from the city of Grand Forks the necessary franchise for the construction and maintenance of a gas-plant, and also a contract for lighting said city for a term of years, and contracts with various private parties; and in the summer of 1887 they began the work of erecting suitable buildings and tanks upon certain land, the title to which was in the defendant Griggs, and of laying gas-mains, erecting posts, and doing generally whatever was

necessary to constitute a gas plant; the plaintiff, Hennessy, who was a skilled plumber and gas-fitter, acting as superintendent of said works. On October 17, 1887, said Hennessy, Griggs and Eshelman, with William Budge and W. J. Murphy, executed and acknowledged certain articles of incorporation, which were duly filed, and the said parties became a body corporate as the Dakota Gas & Fuel Company; said corporation being formed to carry on the business begun by said copartnership, and succeeding to all the rights thereof. The capital stock of the company was $100,000, divided into shares of $100 each. After the formation of the corporation, Griggs, without the knowledge and consent of plaintiff, conveyed to said corporation the land on which the gas-works had been erected, and which was valued at $3,000; and on November 15, 1887, Griggs and Eshelman, without the consent of plaintiff, pretended to convey to said company all the property and effects of the copartnership by assignment in writing, as follows: "Whereas, by the terms of the articles of copartnership of the Dakota Gas and Fuel Company, made and entered into on the 26th day of November, A. D. 1886, by and between Alex. Griggs, Thomas Hennessy, and J. S. Eshelman, as members thereof, it was stipulated and agreed 'that, as soon as may be, the said copartners shall proceed to incorporate under the laws of Dakota, and by the corporate name of 'The Dakota Gas and Fuel Company,' and that when such incorporation is complete the said copartnership shall assign, transfer, and set over to said corporation all of its rights, property, both real and personal, and all of its contracts, interests, and accumulations;' and whereas, the said incorporation named as aforesaid is now complete, and incorporated under the name aforesaid, and as specified in said copartnership agreement: Now, therefore, in compliance with the agreement aforesaid, and in consideration that the said corporation, as party of the second part, expressly assumes and agrees to pay all debts contracted heretofore by said copartnership, party of the first part, and further agrees to carry into effect, and fully perform, all contracts and agreements made and entered into by said first party heretofore, and further assumes all of the existing obligations of said first party, and agrees to hold harmless and

free from all liability said first party, and its individual members, by reason of any such contract, agreement, or obligation, the said first party does hereby assign, set over and transfer to said second party all of its rights and interests in any property, whether the same be real or personal, now owned or claimed by said party of the first part, both legal and equitable, and all of its right, title, and interest in and to a certain agreement entered into and made by and between the city of Grand Forks and said first party, and dated the 7th day of December, A. D. 1886, together with all claims thereunder, and all privileges, rights and immunities heretofore granted the said first party by said city of Grand Forks, whether by ordinance or otherwise. In witness whereof the name of said first party is subscribed hereunto this 15th day of November, A. D. 1887. THE DAKOTA GAS & FUEL COMPANY. By ALEX. GRIGGS. THE DAKOTA GAS & FUEL COMPANY. By J. S. ESHELMAN. Signed and delivered in presence of WM. DALLA CHALK, HENRY EVANS."

. Plaintiff demanded of the corporation that it deliver to him $20,000 of the shares of its capital stock, paid up, and non-assessable. This the corporation refused to do, but offered to deliver to him said amount of stock provided he would pay the assessment of 40 per cent. which had been assessed against all of the stock of the corporation. Thereupon plaintiff brought this action, asking to have the conveyances to the corporation set aside and canceled, and that said corporation be required to reconvey said real estate to said copartnership, and that a receiver be appointed to take charge of the partnership property, and that the same be sold, and, after payment of all partnership debts, that the balance be divided between the copartners according to their respective rights. The findings of fact by the trial court are very full, and seem to cover every point in the case. Many errors are assigned on these findings as not being supported by the evidence, but, from an examination of the testimony, we conclude all of the findings to which exceptions were entered have reasonable support, and cannot be disturbed by this court. From its findings of fact the trial court declared as conclusions of law that the plaintiff and Griggs and Eshelman had, at the time of the attempted transfer to the cor-

poration, the legal title as copartners, to the gas-plant, and the contract and franchise with the city, and all the property described in the pleadings, except the realty; that the copartnership contract is plain and unambiguous, and the parol evidence to explain its provisions must be disregarded; that the conveyance of the real estate by Griggs to the corporation was in pursuance of the contract of copartnership, and vested the title to said realty in the corporation; that the assignment made by Griggs and Eshelman to the corporation, made November 15, 1887, was made in compliance with the copartnership contract, and to carry the same into effect, and that by virtue of said assignment and said contract the corporation became the equitable owner of the property described; that the plaintiff was estopped from claiming as against said corporation any right or interest in said property, real or personal, except the right to 200 shares of stock upon payment of the same assessment, and performance of like conditions, as the other stockholders were required to keep and perform. If these conclusions are correct, the judgment must, of course, be affirmed.

Among other things, the copartnership contract provided that "the capital of said copartnership shall consist of $50,000—Alexander Griggs to furnish $5,000; Thomas Hennessy, $10,000; and J. S. Eshelman, $10,000; the remaining $25,000 to be held by Griggs, to be by him negotiated and raised to and from certain persons in St. Paul, Minn." It is not just clear what was meant by negotiating partnership capital. Had the contract been speaking of corporation stock, it would be perfectly clear. But the parol evidence introduced did not tend in any manner to explain that portion of the contract. Hence such evidence was properly disregarded. This obscurity is largely swept away when we consider the other provisions of the contract, which provided that all profits of the copartnership should be divided *pro rata* according to the capital furnished and held by each member thereof, and that the stock of the corporation, which was to be formed "as soon as may be," should "be held and divided among the parties hereto in the same proportion as the capital stock of said copartnership." The purport of the language was to give the defendant Griggs control of the ma-

jority of the stock of the corporation; and, no doubt, such was the intention of the parties.

The corporation expended over $40,000 in the purchase of materials, and construction of the works. This money the court finds was furnished by Griggs and Eshelman, but it is found by the court to be a debt of the copartnership. Plaintiff, Hennessy, never paid in any money to the firm capital. His theory of the case is that the copartnership capital to be furnished by Griggs, Eshelman, and Hennessy was nominal only; that in fact said parties were to pay in no money, but that their services as copartners were to be received as such capital; that the works were to be constructed with the $25,000 to be raised from outside parties by Griggs, and when the corporation should be formed the copartners would receive their shares of capital stock, paid up, and non-assessable, without the expenditure of any money whatever. But such is not the contract. The capital was to be furnished; that is, supplied, provided, paid in. The services rendered by plaintiff were only such as the law required of a partner; and, in the absence of an express contract, no compensation therefor could be claimed.

Plaintiff became one of the incorporators of the corporation defendant. That corporation was formed under the articles of copartnership, and in pursuance thereof, and was formed to succeed the copartnership in all things, property, franchise, business, contracts, obligations, and liabilities. The two could not co-exist; and, as between the partners and the incorporators, the existence of the corporation worked *eo instanti* the dissolution of the copartnership. There no longer existed any rights or obligations which the partners, as such, could enforce, the one against the other. Nor can plaintiff be heard to say that the corporation defendant is not the corporation contemplated by the copartnership articles, because the capital stock is greater, and the incorporators five, instead of three. He signed the articles of incorporation fixing the amount of capital stock, and specially naming the five persons as incorporators and directors. He must be held to have assented to such alteration. Nor could his rights be in any manner injuriously affected thereby. If he performed the contract on his part, he was still

entitled to the same proportion of the capital stock, to-wit, one-fifth.    His voice in the corporation would be just as potent.    The authorities cited by appellant on this point are not applicable to this case.    The nearest case cited is James v. Cowing, 82 N. Y. 449. In that case, certain railway bonds were secured by mortgage, and the mortgage provided for forclosure, and that the property might be bought in by the trustee for the bondholders, and a new corporation formed as therein provided.    The foreclosure was had and the property bid in as provided; but, instead of forming the new corporation, the trustee, at the request of a majority of the bondholders, sold the property at auction, and it was bought by another corporation, of far greater magnitude than the one contemplated in the mortgage.    One of the bondholders brought action against the trustee for his share of the property thus wrongfully sold.    It was contended that the corporation that purchased the property was substantially the corporation for which provision was made in the mortgage, but the court say:    "It is easy to see that the position of the plaintiff in that company might well be something entirely and destructively different from his situation in the new corporation contemplated in the mortgage."    An inspection of the contract and the articles of incorporation show just the reverse to be true in this case.    In Lindley, Partn. 408, it is said:    "Any article, however express, may be abandoned by consent of all parties; and this consent may be evidenced, not only by express words, but by conduct."    Plaintiff could not have evidenced his consent to the change in the corporation in a more forcible manner than by signing the articles of incorporation in which these changes were embodied.

Under the partnership contract, all the effects of the partnership were to be assigned to the corporation.    Granted that plaintiff was a necessary party to a transfer of the legal title to such property, yet equity, looking ever to the substance, regards that as done that ought to be done; and the full and equitable title is in the corporation.    The transfer executed by Griggs and Eshelman cannot, in equity, be defeated because plaintiff wrongfully refused to join therein.    Nothing remains in the copartnership; and the corporation, by accepting such

transfer, and claiming thereunder, are conclusively held to have assented to the same, and are bound for all the debts and obligations of the late firm. Crawford v. Edwards, 33 Mich. 354. But the court found that the value of the property so transferred was greatly in excess of the debts of the firm; that the franchise alone was worth $35,000 to the owner of the gas-plant —and the plaintiff claims that the corporation is receiving this entire excess of firm assets over liabilities without paying any consideration therefor, and that thereby he, as a member of the copartnership, is being defrauded. The proposition will not bear investigation. All the accumulations of the firm were to be divided among the parties, in proportion to the capital furnished and held by each, on the basis of a capital of $50,000. Plaintiff, if he furnished his capital, would be entitled to one-fifth of the accumulations. If he furnished no capital, he would be entitled to nothing, and could not be defrauded. If he furnished his proportion of capital, he would be entitled to one-fifth of the capital stock; and this proportion could not be affected by the number of stockholders, or amount of capital stock. If plaintiff, as a copartner, should receive from the corporation one-fifth of the excess as above stated, then, as a stockholder, he would be required to pay one-fifth of such excess. His estate would not be affected to the extent of a penny by the transfer. If he takes the stock, he gets the full benefit of the excess in the value of the stock. Counsel contend, however, that, if the obligation did exist to pay in the capital, and if plaintiff failed to do so, still that is a debt to the firm, and that, as between him and the corporation, the plaintiff is entitled to his stock, nothwithstanding. If plaintiff once owed the debt to the firm, he now owes it to the corporation, as the corporation now owns all the effects of the firm; and, as the payment of his proportion of the firm capital was a condition precedent to any right on plaintiff's part to demand stock, the corporation can properly withhold the stock until such payment is made. As the entire corporate stock was absorbed by the parties who were to furnish the capital of the firm, and as, at the time the corporation was formed, the cost of the works had not equaled the capital stock, the money that had been ad-

vanced by Griggs and Eshelman was treated as a partnership debt, and it was determined to assess the stock only in an amount sufficient to pay such indebtedness. By this arrangement, plaintiff could get his stock for $2,000 less money than under the original contract. Of this, however, he ought not to complain.

Lastly, it was claimed that plaintiff was entitled to paid-up, non-assessable stock. Had plaintiff paid in his full amount of partnership capital, perhaps his position would be correct. We do not decide the point. It will be ample time for him to resist further assessments when he shall have paid up to the amount of his original agreement. Affirmed. All concur.

CORLISS, C. J., having been of counsel, did not sit; RODERICK ROSE, district judge, sitting in his place.