OWEN v. REED et al.

EQUITABLE LIENS—*When will not pass by assignment.*—Liens, not reserved by contract or declared by a court of equity, will not pass by the mere assignment of a note in the ordinary course of business.

TRUSTEES—*Powers of, over trust estate, etc.*—Persons dealing with a trustee, on the faith of the trust estate, are bound at their peril to take notice of the scope and extent of the trustee's power, and the trustee cannot bind or incumber, by contract or otherwise, the trust estate, except only so far as the power may be conferred or given by the instrument creating the trust.

POWERS OF—*How construed.*—The powers of a trustee are strictly construed and no presumptions are indulged in their favor, and in case of necessity for extended powers, the trustee must act under the direction and orders of a court of competent jurisdiction.

APPEAL FROM CHICOT CIRCUIT COURT.

HON. HENRY B. MORSE, *Circuit Judge.*

*Garland & Nash,* for Appellant.

The charges made upon the estate by the will, made the estate equitable assets to be administered in a court of equity. *Silk vs. Prime,* 2 Lead. Cases Eq., part 1, top page 212, et seq. and notes; Note, *Booth vs. Blundell* (top page, 213); *Merival,* 232; *S. C.* 19.

The estate being kept together for a certain time to be worked for the benefit of all, charges it with equal burdens, upon the principle of contribution. *Adams' Eq.,* 267; 1 *Story Eq.,* 64; and so far as the absolute legacies are postponed, it matters not, as they are vested at once, but only a time for payment is given or named. *Quarles vs. Watkins,* 23 *Ark.,* 179. And it is but equity for those benefited, and having these legacies, to contribute to pay expenses as the will provides. *Eyre vs. Countess of Shaftsbury,* 2 Lead. Cases, part 2, p. 166–8, et seq.; *Alexander vs. Waller,* 6 *Bush.* (*Ky.*), 332–445.

*Bell & Carlton and D. H. Reynolds,* for Appellees.

Since the establishment of *trusts,* it is well settled law that

trustees hold only for the benefit of the *cestui que* trust, and the legal estate should not be subjected to any of their incumbrances. *Hill on Trustees, p.* 379; *Lomax's Dig., vol.* 1, *p.* 299; *First P. Wms.,* 278; 2 *P. Wms.,* 318; *Noel vs. Irvon,* 2 *Freem.,* 43.

Nor can the legal estate, *or any other estate held only in trust,* be affected in equity by the judgment, or other debts or engagements, or by the bankruptcy or insolvency of the trustees. *Hill on Trustees, p.* 379; *Elliott vs. Armstrong,* 2 *Black.,* 208; *Bostick vs. Keizer,* 4 *J. J. Marsh,* 599. It is a well settled rule, that trustees *for infants* cannot break in upon the capital of the trust fund. *Hill on Trustees, p.* 573. The beneficiaries in these settlements are usually in a helpless situation, either from infancy or coverture, and it is indispensible to the safety of the estate to hold the trustees to a strict accountability. *Hester et al. vs. Wilkinson et al.,* 6 *Humph.,* 219. See also the cases of *Mundy vs. Vawter et als.,* 3 *Grat.,* 518; *Carter et als. vs. Rolland et ux.,* 11 *Humph., p.* 333; *Chaplin vs. Moore,* 7 *Mon. R., p.* 170.

GREGG, J.—On the 9th of November, 1869, the appellant, on behalf of himself and other creditors, filed his bill in the Chicot Circuit Court, in which he alleged that on the 8th of July, 1859, George Reed, the husband of said Susan, and the father of George Reed, Jr., and two other minors, defendants in this suit, departed this life, leaving a will, duly executed, in which he had provided that his estate, in said county, should remain in the possession and under the control of said Susan, and that she should receive the rents and profits thereof, for the support of herself and family and the payment of certain debts and bequests; that the same should be held by her, as trustee, without any claim of dower and without administration, until said George, Jr., should arrive at twenty-one years of age, when, jointly with his mother, he was to have control and possession of said property. The lands, on which the family were to reside, during the life of said Susan, were to

pass to him, and when his brothers and sisters should arrive at majority, George was to pay each of them $10,000, which was to be a charge upon the lands; that the legacies and annuities provided for, in the will, for some more distant relations, were not to be a charge upon the body of the estate, but upon the net profits, and if the proceeds were not sufficient to pay all, the expenses of the family were to be first paid, and in no event was any of the property to be sold or divided before George arrived of age. The estate was large and very valuable. That no letters, testamentary or of administration, were ever taken out, but that the estate has been occupied and possessed by the said Susan, and it is now in the joint possession of her and the said George. That on the 1st day of January, 1866, the said Susan Reed was indebted to George Connelly & Co., of New Orleans, in the sum of fifteen thousand dollars, for supplies furnished and moneys advanced her, necessary to support the family, and carry on the plantation in the cultivation of cotton, etc., and being so indebted, she, on the 8th day of February, 1866, executed her three promissory notes for the sum of five thousand dollars each, due respectively at one, two and three years, and that said firm indorsed said notes to the plaintiff, and that the plaintiff had recovered judgment on one of them, which was unsatisfied and that the other notes were wholly unpaid.

The said Susan was indebted to *Newman & Buckingham* in the sum of $1,200, and to Dean, Adams & Gaff $500, and to others unknown, who are offered the privilege of joining in this suit. That the defendants have enjoyed the profits of the estate up to this time, and that the estate is liable to them, etc. And he prayed that an account be taken and the said Susan and George be decreed to pay said plaintiff the amount due and, in default thereof, that the estate be held liable and the lands sold to satisfy such claims, and for general relief.

At the October term, 1870, the defendant, George Reed,

filed a demurrer. The minors, by their guardian, answered, and the said Susan also filed an answer, in which she admitted that her husband died at the time alleged and that he left a large estate; that he willed as stated, and that she, as trustee, has held the same for the purposes named in the will. She admitted that she owed the parties named in the bill for supplies furnished her, and that she executed her notes as stated, which were accepted as a full satisfaction of all she owed them, and she averred that a large part of said notes was for an usurious interest, and she insists that they were void and that the plaintiff knew the consideration upon which they were given. She admitted the judgment and that the notes were not paid, and averred that the indebtedness was her individual liability, and that the estate is in no way responsible therefor.

And she inserted a demurrer clause in her answer and insisted that the plaintiff's remedy was complete at law; that the bill showed no equity on its face, etc.

John Connelly, of the firm of George Connelly & Co., appeared and, by order, was made a defendant, and filed an answer in which he attempted to set up cross matter against the complainant, but he did not call upon complainant or any one else to respond to his allegations of interest in the proceeds of the suit, nor did he show any equities that entitled him to intermeddle in such proceedings, and the court should not have permitted his pleadings to incumber the record in the cause. At the March term, 1870, the demurrer of George Reed was heard and sustained. The bill was dismissed for want of equity, and the complainant appealed to this court.

So far as shown from this bill, the appellant is the holder of negotiable notes, assigned to him in the usual course of business, and if it were true, as he alleged, that George Connelly & Co. had a lien upon the estate of George Reed, deceased, for supplies furnished to support the family and the plantation, would such lien enure to the benefit of the appel-

lant? There is no pretense that they had or could have claimed anything more than an implied or equitable lien, and as no lien had been reserved by contract, or declared by a court of equity, it could not have passed to him by a mere assignment of the notes in the ordinary course of business.

The rights of George Connelly & Co. must depend upon their agreement with Susan Reed, and upon her power as trustee under the will of George Reed, deceased.

It is not claimed that she individually had any right, or ownership, in the estate, which authorized her to incumber or transfer the same, but whatever of power or authority she had, was conferred upon her as trustee, by the will of the deceased.

The will is not difficult to understand. It, in substance, provided that his wife (said Susan) should for a time hold his entire estate in trust for his children and the payment of certain debts, legacies and annuities, and then it is to be partitioned in a specified manner among his children. The will authorized her to use the rents and profits for the maintenance and education of the children and the support of the family, payment of certain legacies, etc., and that the entire income may be used for such purposes; but it is expressly provided that the charges are against the profits and not against the body of the estate, and that the whole of the property shall be kept together for a home for the family.

This will was duly recorded, and the defendant, Susan, acting under it, was notice altogether sufficient to George Connelly & Co., or any one else who dealt with her, on the faith of the trust estate, and they were bound at their peril to take notice of the scope and extent of her power, and, as above stated, she had no power, only such as was given her by the will; and it is a well understood rule that all trustees are held to a strict account, and no presumptions of power are indulged in their favor; it must be directly expressed or fully implied in the grant, and especially so where infants or others who are helpless, are concerned; and, even

in cases of necessity for extended powers, the trustee must act under the direction and orders of a court of competent jurisdiction, and cannot, at their own discretion, make inroads upon the body of a trust estate.

Mr. Hill, in his valuable work on Trustees (*Marg.*, p. 399) says: "It is a settled rule of the court, that trustees for infants ought never, of their own authority, to break in upon the capital of the trust fund, even for the advancement of the infant, and still less merely for his maintenance.

Therefore, if the instrument, the trust, do not authorize an application of the corpus of the fund in advancement and maintenance, however advantageous to the infant to make such payments, this can be done only with safety under the sanction of the court," etc.

In the case of *Hester et al. vs. Wilkinson et al.*, 6. *Hump.* 219, the court said: "But courts of chancery never permit trustees, of their own authority, to break in upon the capital of the trust estate, and to sanction the expenditure, after it has been made, would give a license to trustees that would endanger estates committed to them; the beneficiaries * * * * are usually in a helpless situation * * * * and it is indispensable to the safety of the estate, to hold the trustee to a strict accountability," etc. *Munday et al. vs. Vawter et al.*, 3. *Gratton* 518. *Enlyn vs. Enlyn*, 2. *P. Wm.* 669. *Ivey vs. Gilbert, Ib.* 13.

A trustee, if so disposed, is not allowed by individual acts or responsibilities to consume or burden a trust estate. *Bostick vs. Keizer*, 4. *J. J. Mar.* 600. *Chaplin vs. Moore*, 7. *Mon.* 171. Judgments against trustees, as individuals, cannot affect the trust property. *Hill on Trustees*, 269. (*Marg. p.*) *Ib.* 367.

To apply the principles announced in those cases to the one before us, there seems to be no serious difficulty in coming to a conclusion. There was not only an absence of authority to expend the body of Reed's estate, but the will expressly declares that only the rents and profits should be used, and these provisions appeared upon the public record of the county and

constituted facts of which creditors must be presumed to have taken notice, and if they saw fit to credit her as trustee under the will, could, under no circumstances, have looked beyond the rents and profits for their pay.

There is no allegation in the bill that credit was given to her as trustee, or that she was trusted on the credit of the estate or of the rents and profits of the estate, or that the whole of the indebtedness was not an individual liability of hers. There is an interrogatory appended to the bill, asking whether all or any part of the indebtedness was contracted by the said George Reed, deceased, in his lifetime, but she was under no obligation to notice such question, when there was no allegation in the bill to support such an interrogatory. The whole tenor and scope of the bill, in stating the contract, tends to charge her with an individual liability. And in February, 1866, *George Connelly & Co.*, closed up all accounts and took her individual promissory notes for the full amount, and these notes, as other commercial paper, in the market, passed into the hands of the complainant, and we find but a single allegation in his bill, that conduces to show that any responsibility, under any circumstance, should attach upon Reed's estate, and that was that the supplies furnished to Susan Reed were for the use of the plantation and the family. But if she and that firm had expressly agreed that the estate should be liable to them for the supplies, according to the authorities referred to, the lands could not be held subject to the payment of such demand, because she had no authority to pledge the estate in that way, and if it had been required to the use of the body of the estate, as a necessity to the subsistence and support of the family, etc., to have made ordinary creditors secure, an order of a competent court should have been had, declaring such necessity and authorizing such use. But as stated, the bill alleges that she was credited with the supplies, her individual notes were taken for the amounts, and by assignment, in the usual course of business, they came into the hands of the complainant, and in

that way, we are of opinion he acquired no rights he can enforce against the lands of the estate of George Reed, deceased, and that the court below did not err in sustaining the demurrer to the bill.

The decree of that court is in all things affirmed.