M. A. SMITH, Liquidator, Trust Company of Florida, v. MASSACHUSETTS MUTUAL LIFE INS. Co.

156 So. 498.

En Banc.

Opinion Filed September 10, 1934.

*Edward E. Fleming,* for Appellant;

*Redfearn & Ferrell,* for Appellee.

*Stapp, Gourley, Vining & Ward* and *Price, Price & Hancock* as *Amicus Curiae.*

BROWN, J.—Briefly stated, the most sharply controverted question involved in this case is whether the trustee, named in a corporate trust deed or mortgage securing a bond issue, was, under the terms of such trust deed, or by order of court, expressly or impliedly authorized to represent the bondholders in matters affecting the enforcement of the security and the administration and protection of the trust property to the extent of placing a new mortgage on the property, after buying it in at the foreclosure sale under the trust deed, for the purpose of paying the costs and charges set forth in the foreclosure decree and establishing

a fund for repairs, insurance premiums, accrued taxes, etc., for the protection of the trust estate, as outlined in the trustee's motion for confirmation of the foreclosure sale, which sale was confirmed by the court before such new mortgage was executed. There is also a question as to whether the present Liquidator of the Trust Company of Florida, to which Company the Marion Mortgage Company, trustee under said trust instrument conveyed the property subject to said new mortgage, is estopped to question the validity of said mortgage, which his predecessor had recognized, no bondholder having ever raised any objection to the execution and delivery of said mortgage.

The bill in this case was filed on September 8, 1933, by the Massachusetts Mutual Life Insurance Company, against Marion Mortgage Company, a Florida corporation; M. A. Smith, as Liquidator of the Trust Company of Florida, a Florida corporation, as Trustee, and certain other parties who have made no contest and whose names it is not necessary to set forth.

The purpose of the bill was to foreclose a mortgage executed on September 10, 1928, by Marion Mortgage Company to the plaintiff, securing the payment of five promissory notes aggregating $35,000.00, bearing the same date as the mortgage, the first four notes being in the sum of $1000.00 each and falling due one each year respectively for four years, the fifth note, in the sum of $31,000.00, being made payable at the end of the fifth year, or to be more exact, on September 1, 1933, with interest thereon at 6% payable semiannually, and with interest after maturity at 10%. The mortgage described certain properties in the City of Miami, Florida, on which, as appears elsewhere, the Cortez Hotel is located. The bill alleged default in the payment of interest falling due in 1932 and 1933.

The bill as amended also alleges that at the time of the execution of said mortgage, the Marion Mortgage Company held the legal title to said property; that thereafter said Mortgage Company conveyed the property by warranty deed to the Trust Company of Florida, as Trustee, expressly stating in the deed that it was made subject to the mortgage above described, and that the Trust Company of Florida as Trustee accepted said deed containing said recital and went into possession of said property as trustee. That defendant, M. A. Smith, as Liquidator of the Trust Company of Florida, as Trustee, is now the holder of said legal title, and holds the same subject to the lien of the mortgage sought to be foreclosed.

The bill as amended alleges that after said conveyance to the Trust Company of Florida as Trustee, the latter paid the first three principal notes maturing and all semiannual interest up to the time of its liquidation; that said Trust Company was taken over by the Comptroller and went into liquidation November 27, 1931, and J. H. Therrell was appointed Liquidator. That Therrell as Liquidator paid the semiannual interest due on said mortgage and unpaid notes on March 3, 1932, and again on September 1, 1932; that therefore both the said Trust Company, and the Liquidator who later took charge of its affairs, recognized the validity of complainant's mortgage. The bill also alleges the insolvency of the Marion Mortgage Company and the non-payment of the taxes due in the years 1931 and 1932. There is also a claim for attorneys' fees and cost of bringing an abstract down to date, and an application for a receiver on the ground that the property is not worth the amount due the plaintiff under said mortgage.

The defendant Liquidator filed an answer to the bill of complaint, which was subsequently adopted to the bill as amended, and upon the granting of motion to strike por-

tions of the answer, an amended answer was filed on March 26, 1934. Portions of this amended answer were stricken on motion of the plaintiff and it is from this order that this appeal was taken.

In support of its attack upon the validity of the notes and mortgage secured by the Marion Mortgage Company to the plaintiff, the answer alleges that on July 1, 1924, the Cortez Hotel Company, a Florida corporation, executed and delivered to the G. L. Miller Bond and Mortgage Company, the name of which company was subsequently changed to Marion Mortgage Company, 727 bonds aggregating $330,-000.00, payable in different denominations and at different times over a period of years, and at the same time executed to the same company, as Trustee, its mortgage or deed of trust incumbering the property described in the bill, a copy of which instrument is attached to the bill as exhibit and made a part thereof. On May 25, 1927, the Marion Mortgage Company, being the same company as that named as Trustee in said mortgage or deed of trust, filed a bill for the foreclosure of said mortgage as trustee for the bondholders, which proceedings resulted in the sale of the property on June 4, 1928, at which sale the Marion Mortgage Company purported to purchase said property for the bondholders; that it paid no consideration for the property at said Master's sale, but used the bonds of the bondholders, which had theretofore been sent to said Marion Mortgage Company as Trustee for the purpose of foreclosure, in the purported payment of the amount bid for said property. That by its motion for confirmation of sale it was disclosed that said Mortgage Company was acting for the bondholders, and a copy of said motion is attached to the answer and made a part thereof. That none of the bondholders were parties to said foreclosure proceedings. That thereafter, on June 11, 1928, said Circuit Court of Dade County confirmed the

Master's sale and directed the Master to execute a deed to said Marion Mortgage Company, which deed on its face conveyed the premises merely to the Marion Mortgage Company, and not to such Company as Trustee, although it appears from the foreclosure proceedings that said property was in truth and in fact conveyed to said Marion Mortgage Company as Trustee for the bondholders, and that the plaintiff was charged with implied or constructive knowledge of that fact. The answer further alleges that said Mortgage Company did not obtain the consent or approval of the bondholders for the execution of the notes and mortgage to the plaintiff, and that the original trust deed did not by its terms expressly or impliedly authorize or empower the trustee therein named either before or after foreclosure sale, to execute any mortgage covering said trust property, or to borrow any money, or to pledge or otherwise encumber said property, and the answer alleges that the execution of said mortgage and notes by the Marion Mortgage Company to the plaintiff Insurance Company was wholly null and void, because they were executed without the approval of the bondholders or beneficiaries who were then being represented by the said Marion Mortgage Company. That therefore the notes and mortgages are not binding upon the bondholders, who are now represented in a fiduciary capacity by the defendant, M. A. Smith, as Liquidator, etc., whose duty is to protect and preserve the rights and interests of the bondholders.

The answer admits that the Trust Company of Florida, to whom the bill alleges the Marion Mortgage Company had conveyed the property a few days after the latter had received the Master's deed therefor, paid the first three principal notes, and that after said Trust Company was taken over by the Comptroller and J. H. Therrell was appointed as Liquidator, the latter made certain interest payments, as

alleged in the bill, but that neither said Trust Company as Trustee, nor said J. H. Therrell as Liquidator, could by such payments estop or bar themselves in their trust capacity from defending against said mortgage on the grounds of its invalidity, and that the defendant, as the present Liquidator of said Trust Company as Trustee, should be permitted to urge every defense herein that could be urged by the bondholders were they themselves parties defendant.

The answer admits that the Marion Mortgage Company, by deed dated September 15, 1928, conveyed said property to the Trust Company of Florida as Trustee, but alleges that said Trust Company thereby became trustee *de son tort*, or a constructive trustee, in the place and stead of said Marion Mortgage Company, because the bondholders did not authorize or approve the transferring of the trusteeship from the Marion Mortgage Company to the Trust Company of Florida.

The answer alleges that defendant is without knowledge as to the various charges for abstract, attorney's fees, etc., and avers that he is without knowledge as to the employment of attorneys by the plaintiff to defend its rights in a certain cause in the District Court of the United States, wherein Eaton and Stearns, as receivers, etc., were plaintiff, as alleged in the bill, but denies the right of plaintiff to claim a lien against the property for any sums so paid out or expended by the plaintiff, because of the invalidity of the mortgage deed and promissory notes herein sought to be foreclosed which it alleges are null and void.

Turning to the exhibit attached to the answer, it appears that the bonds executed by the Cortez Hotel Company to the G. L. Miller Bond and Mortgage Company, and secured by a trust deed to said company, each recited that: "and such trust deed or mortgage is hereby referred to and as to all of its terms and provisions is hereby made a part

.of this bond." And each of said bonds further provides that: "* * * it is to be received and held subject to all and singular the terms, provisions and conditions contained in said trust deed or mortgage hereinbefore referred to." The 727 bonds matured at various times from July 1, 1926, to July 1, 1939. It also appears from the exhibit attached to the answer that the trust deed was executed July 1, 1924, by the Cortez Hotel Company to the G. L. Miller Bond and Mortgage Company, a Florida corporation, having its principal place of business in Miami, Florida, as Trustee, and that said trust deed contained among other things, the following provisions. The second paragraph of the trust deed reads as follows:

"2. The said property, subject to the terms, conditions and agreements herein contained, shall be held and disposed of by the Trustee for the equal *pro rata* benefit and securing of all the persons who shall be the lawful owners of said bonds, without preference of one bond over another."

The fifth and six paragraphs of said trust deed reads as follows:

"5. The Trustee, or any of the bondholders, or any person or persons acting in their behalf, may, and the same hereby are authorized to purchase the property or properties at any sale or sales thereof, whether made under the power of sale hereinbefore contained or pursuant to a judicial decree or judgment, and the receipt of the Trustee shall be sufficient to discharge the purchaser or purchasers for his or their purchase money.

"6. In case of such default as aforesaid, continuing as aforesaid, the Trustee may take possession of the premises conveyed by this trust deed or mortgage and manage the same, receiving the rents, issues and profits therefrom and expending the same for the maintenance and upkeep of said property, the payment of taxes, insurance premiums and

other charges against the same as may be necessary, and applying any surplus of income to the satisfaction of such items as may have been defaulted upon by said owner until said bonds and this trust deed or mortgage shall be restored to a position where no default exists; or if, after taking possession of said premises and managing the same, as herein provided, said Trustee be not able to remove the defaults within a reasonable time, it may without restoring said premises to the owner, proceed to exercise the power, of sale hereinbefore provided for, *or take such other steps as may be necessary and legal for the protection of such bondholders."* (Italics supplied.)

Paragraph twenty-two of the trust deed contains the following terms and provisions:

"22. * * * but in the event of such default, or the performance of further duties made necessary by such default, such Trustee shall receive a reasonable compensation for any duties that it may at any time perform in the discharge of the same, and reimbursement for all legitimate expenses, including counsel fees, incurred by it, and all such fees, commissions and disbursements shall constitute a first lien on the property and premises and upon all sums in its hands held hereunder."

Paragraph twenty-four provides that:

"24. The term 'Trustee' as employed in this instrument, shall be taken to mean the Trustee hereunder for the time being, to-wit: C. L. Miller Bond & Mortgage Company, or its successor or successors in trust."

There is also attached as an exhibit to the answer a copy of the motion for confirmation of sale in the case of Marion Mortgage Company as Trustee v. Cortez Hotel Company, et al., filed in the Circuit Court for Dade County, a few days after the Master's sale of June 4, 1928, which reads as follows:

"Now comes the complainant in the above stated cause, by and through its solicitors, Redfearn & Ferrell, and files this supplemental motion for confirmation of the sale in the above stated cause on the following grounds:

1.

"The Master appointed in the foregoing cause has filed of record his report of the sale of the property encumbered by and described in the mortgage foreclosed by the final decree of this Court in this cause. Said report shows that advertisement was fully made in accordance with the terms of the final decree entered in this cause and said property was offered for sale at public outcry before the court house door in Miami, Dade County, Florida, on the 4th day of June, 1928, between the legal hours of sale and that the same was sold to Marion Mortgage Company, a Florida corporation.

2.

"Complainant alleges that the property involved in this foreclosure has little market value at present, and if the same should be sold without regard to the rights of the bondholders they would sustain great loss. The amount of the bid hereinbefore mentioned is $160,000.

3.

Complainant further shows that the Marion Mortgage Company does a general bond and mortgage business in Miami, Dade County, Florida. Under its charter it has general trust powers, and its future, as well as that of complainant, is irrevocably tied with the financial development of this State. It is associated in the trust business with the Trust Company of Florida and is co-operating in an effort to salvage as much as possible for the bondholders of the various bond issues in which it and the Trust Company of Florida are interested, not only that justice may be done

to these bondholders, but also that the faith of northern investors may be retained in Florida securities. In causing said bid of $160,000.00 to be made, complainant and Marion Mortgage Company had this situation in mind and has no desire to make any profit for themselves in this transaction. Their desire is to aid in the protection of the bondholders in this cause and to sustain the faith of northern investors in Florida securities. Complainant shows that the Marion Mortgage Company is now ready to comply with said bid and pay to the Master the costs and other charges mentioned in the final decree and pay the balance of its bid with bonds secured by the trust deed or mortgage foreclosed in this cause. Complainant now asks that the Master be instructed to convey the title to said Marion Mortgage Company, which company will place a mortgage on said property for the purpose of paying the amount of the costs and charges set forth in the final decree and establishing a small fund for repairs, insurance premiums, 1928 taxes and other such incidental charges accruing against said property. The title to this property, subject to said mortgage, will then be transferred, together with the remaining cash on hand, to the Trust Company of Florida as Trustee, for the benefit of the bondholders.

### 4.

"Complainant shows that it is necessary that such a plan be approved and the bid confirmed in order that the property described in said mortgage may not be left uninsured and the property sold for the taxes which for the years 1926 and 1927 are already in default. Complainant is unable to advance its own funds for the payment of these insurance premiums and taxes as it has already exhausted all of its available funds for the purposes in endeavoring to protect up to this time the various bond issues in which

it is interested. Complainant further shows that the following is a list of the insurance now outstanding on said property, showing the policy number, the name of the company, the date of expiration of the policy, the kind of insurance and amount of the premium; (Omitting the details, the statement shows insurance premiums due to the amount of $1566.82.)

It is imperative that the bid above mentioned be confirmed in order that the necessary funds to pay these insurance premiums and the taxes may be obtained. Unless this is done the property will become uninsured and may be lost entirely to the bondholders. Complainant further shows that the taxes now existing against said property amount to approximately $8,333.92, and that it is necessary to pay said taxes immediately in order to prevent further penalties.

Complainant shows that if said bid is confirmed to Marion Mortgage Company it will place a five-year first mortgage on said property due on or before five years from its date for a sum sufficient to pay these items, as well as the other items of costs and expenses mentioned in said final decree. The property will then be deeded to Trust Company of Florida, as Trustee, subject to said mortgage, and said Trustee will then hold said property and manage the same for the benefit of said bondholders and will issue participating certificates to the bondholders for their pro rata interest in said property as is evidenced by the bonds which they own in said issue. By this method of co-operation, said property can be kept insured and its taxes paid, as well as the other costs and charges mentioned in the final decree, and said property can be kept in a healthy financial condition. Thus, said property will have a small first mortgage on it due on or before five years which complainant believes is ample time for a return of values in Florida to

take place in which event the investors owning the bonds involved in this foreclosure will have an opportunity of saving their investment. Complainant knows of no other method by which this can be done. Complainant realizes, however, that if such a plan is carried out that it will be beneficial to this complainant as well as to other trust companies in that faith in Florida investments will be greatly strengthened.

5.

"Complainant shows that it could have increased the bid up to the amount of the bond issue in this case, thus making it appear that said property has sold at a high valuation, but it would have been impossible to obtain the consent of all the bondholders to such increased bid or any other bid as they are scattered widely and some of them unknown. If this bid is not confirmed there is only one course to pursue and that is to sell the property now for such a sum as it will bring on the present market in order that the costs may be paid and the bondholders receive whatever sum might be left. This policy would be ruinous to the bondholders. For these reasons complainant asks that the bid of the said Marion Mortgage Company be approved and confirmed.

"WHEREFORE complainant prays that said sale be confirmed for the reasons hereinbefore alleged and the Master be instructed to make a deed for said property to Marion Mortgage Company."

The answer alleges that after the above quoted motion was filed, the said court, on July 11, 1928, confirmed the Master's sale and directed the Master to execute a deed to said Marion Mortgage Company, which was done and the deed accepted. The Marion Mortgage Company then executed the mortgage here in question and conveyed the property to the Trust Company of Florida subject to the mortgage.

· We gather from the briefs filed in this case that there are a number of other cases pending in the Circuit Court involving the same questions here presented. This may very readily be surmised from what was said by the Circuit Court of Appeals, Fifth Circuit, in the case of Trust Company of Florida v. Illick, 54 Fed. (2nd) 286, where, in the opinion of the Circuit Judge Sibley, there appears the following:

"The pleadings and evidence are complicated, but the facts which we esteem important at present are not in doubt, and may be summarized thus: Just prior to 1926 numerous hotels and office buildings had been erected by the sale of a bond issue on each in which either Marion Mortgage Company, a Florida business corporation, or the Trust Company of Florida, a trust company organized under the laws of that state, both controlled by G. L. Miller, was trustee for bondholders with the usual powers of such a trustee. After 1926, foreclosures became necessary in nearly every case. No one would buy, and the several properties were bought in for the bondholders by one of these corporations. The bondholders failing and refusing to put up funds to pay taxes, insurance, expenses of foreclosure, repairs, and the like, and the income being sufficient therefor, a small mortgage was executed on each property to raise the money thought necessary for it, and was sold on the market; or, where that could not be done, the Trust Company of Florida took the mortgage and made advances against it. Subject to the small mortgage, the title when not already in the Trust Company of Florida was then conveyed to it, and that company issued a certificate of ownership to each former bondholder in proportion to his interest. In this way the Trust Company of Florida came to hold title by conveyance under the above foreclosure arrangements to nearly two hundred pieces of property, but in trust for cer-

tificate holders who had accepted certificates, and for such bondholders as had not accepted them but had not been otherwise settled with, in addition to being trustee in some unforeclosed mortgage." \* \* \* \* \* \* \* \* \* \*

"In the unforeclosed trust mortgages, the Trust Company of Florida had a title in trust, with a contract right under which fees might be earned. In those which had been foreclosed it held title in fee, but subject to equitable rights in the several bondholders. In all cases it claims to have made advances in the line of its duties as trustee and to preserve the property for which it has a lien thereon, totaling over $400,000, more than twice its capital stock. The safety of this investment and the solvency of the company depend on the management and eventual disposition of the trust properties. The handling of these two hundred trusts is the major part of the business of the company. It is plain that the trusts are in a very substantial sense property and business of the Trust Company which the comptroller may seize and liquidate under the law. The comptroller and his liquidator are competent to execute trusts like those here involved; they being within the powers of the corporation to be liquidated. Power v. Chillingworth, 93 Fla. 1030, 113 So. 280."

Appellant's brief, in its "statement of questions involved," puts forward two questions, which he contends raise the same propositions of law and should be considered together. The first is, in substance, merely the query, whether the defendant's amended answer presented a good defense to the plaintiff's amended bill. This statement does not comply with amended rule 20, and must be disregarded. See St. Andrews Bay Lumber Co. v. Bernard, 102 Fla. 389, 135 So. 831. The second question, however, is stated in such form as to comply with the rule, based on what we are sure was appellant's honest conception of the essential and per-

tinent facts contained in the pleadings, but which does not, as we view the case, hypothesize all the essential elements involved, as raised by the pleadings and the motion to strike, and which contains at least one deduction from the facts stated in the pleadings which we do not deem to be well founded; all of which will appear later. The second question involved as stated by appellant, is:

"Does a trustee representing *cestuis que trustent,* bondholders or beneficiaries, have the right to make, execute and deliver a mortgage encumbering the trust property where the instrument under which the trustee is acting grants no such authority, and where the beneficiaries do not give or extend their consent or approval for the execution of such mortgage, and where no court of competent jurisdiction authorizes or attempts to authorize the execution of such mortgage by the trustee, and the rights of no innocent third party for value are involved? The lower court answered the above question in effect by holding that such a trustee, under the above circumstances, had the right to execute such a mortgage, and that the Liquidator of the Trust Company of Florida, as trustee, was estopped in law and in equity from raising such defense on behalf of the *cestuis que trustent,* bondholders and beneficiaries."

Before discussing the law of case, it might be observed that there nowhere appears in the amended answer filed by the Liquidator any allegations of fraud, or bad faith, or any misuse of the money derived from the mortgage made by the Marion Mortgage Company to the appellee, and which the motion for confirmation of the foreclosure sale indicates was made for the benefit of the trust. Nor is it seriously contended that the Marion Mortgage Company as trustee under the trust deed was not authorized to purchase the property at the foreclosure sale. Indeed, the fifth paragraph of the trust deed, hereinabove quoted, expressly gave

it that power. And if the Marion Mortgage Company had no such power, either expressly or impliedly, and if the master's deed to it should be held void, then its deed to the Trust Company of Florida, which was made expressly subject to said mortgage, conveyed no title, and the appellant Liquidator of such Trust Company would have had no title and no standing in court to defend against this suit. But what the Liquidator appears to seek by his answer in this case is, not that the master's deed to the Marion Mortgage Company or the latter's deed to the Trust Company of Florida be held void, but only that the Marion Mortgage Company's mortgage to the appellee Insurance Company, to which the deed was made subject, be so held, as having been made without authority. However, the Liquidator does not deny that the trust estate received the benefit of the funds represented by the mortgage now before the court, and while asking that the mortgage be declared void, he does not offer to do equity by offering to return the consideration for the mortgage, or so much thereof as can be shown to have been used solely for the benefit of the trust estate. Nor is it claimed that a single bondholder objected to the plan of refinancing and saving the property for the benefit of the bondholders which was proposed by the trustee in its motion for confirmation of sale, and so far as appears from the record nearly six years have passed without any bondholder ever having objected to such plan. Nor does it appear that any bondholder objected to the foreclosure of the mortgage by the trustee, nor to the purchase of the property by the trustee at the foreclosure sale, and neither does it appear that any bondholder appeared at the sale and made any bid for the property, either for cash or otherwise, or made any objection to the trustee bidding in the property and using the bonds, which had been turned over to the trustee, for the purpose of paying the amount

of such bid. Nor has any bondholder joined in the present case, and so far as the record shows the Liquidator is merely testing out the validity of this mortgage without the knowledge or consent of any bondholder. No allegation is made in the answer that the bondholders are dissatisfied with the manner in which this property had been handled during the past six years or that any of such bondholders had instructed the Liquidator to refuse to make further payments of interest or principal on the mortgage. Construing the pleading most strongly against the pleader, the statement of facts shown by the portions of the answer stricken in this case shows, not only that the Trust Company of Florida and the first Liquidator, J. H. Terrell, recognized the validity of this mortgage by making payments on it, but it also shows laches on the part of the bondholders, who for six years have made no objection to the action taken by the trustee in the trust deed or questioned in any way the validity of the mortgage which it was necessary for the trustee to make in order to buy in the property at the foreclosure sale for the benefit of the bondholders. If the bondholders are barred by laches from now questioning the validity of this mortgage, then the present trustee, the Liquidator, would likewise be barred.

The Trust Company of Florida was not named as a trustee in the trust deed from the Cortez Hotel Company to the G. L. Miller Bond and Mortgage Company (later Marion Mortgage Company), as trustee, and was never at any time appointed, either by a court or by the bondholders, as a successor or substitute trustee under said trust deed. The only claim it has as trustee is by reason of the warranty deed from the Marion Mortgage Company made to it as trustee for the bondholders, when said deed is considered in the light of the trustee's motion and the Court's order of confirmation. The appellant raises the question as to the

authority of the Marion Mortgage Company to execute the mortgage to appellee in the absence of any express provision of the trust deed so authorizing it, and in the absence of the consent of the bondholders. The same question could be raised as to the conveyance by the warranty deed from the Marion Mortgage Company to the Trust Company of Florida as Trustee, as the trust deed does not appear to contain any express authority for the trustee to make such a conveyance, either individually or as trustee. It is not claimed that the consent of the bondholders was obtained to the execution of either the mortgage or the deed. If the contention of appellant is correct, that the mortgage of appellee is void for lack of express or implied authority of appellee is void for lack of express or implied authority in the trust deed to execute such a mortgage, then for the same reason the deed of appellant is likewise void, and appellant, claiming under a void deed, would have no interest in the suit and no right to question the validity of the mortgage. The appellant's answer alleged that by its motion for confirmation of sale the Marion Mortgage Company disclosed that it was acting for the bondholders. This allegation is well founded, but the same motion for confirmation of sale shows that said Mortgage Company was also acting for the best interests of the bondholders in apprising the court that it would have to place a mortgage on the property in order to pay the expenses of foreclosure, etc., as hereinabove enumerated, so as to enable it to make good on its bid and save the property from being resold at a ruinous price. The motion for confirmation is just as strong evidence for one of these propositions as the other. The answer also alleges that the mortgagee, the appellee in this case, took this mortgage from the Marion Mortgage Company charged by the record in the foreclosure case with notice to the effect that the Marion Mortgage Company,

although it purchased the mortgaged property in its individual name, was acting as trustee for the bondholders, but that appellee also took said mortgage charged with notice of the fact that said trustee had no authority under the trust instrument to make such a mortgage. The same allegation would hold good as to the power of the Marion Mortgage Company to convey the property to the Trust Company of Florida. It thus appears that if the validity of the mortgage to the appellee, and the deed to the Trust Company of Florida, must depend upon express authority in the original trust indenture executed by the Cortez Hotel Company, both would have to fall.

The trust involved in this case undoubtedly began as an express trust under the trust deed or mortgage securing a bond issue on the Cortez Hotel property. Whether this express trust ended when the decree of foreclosure was entered, and a new express trust arose under the master's deed issued under the decree confirming the sale and the motion for confirmation with power in the trustee to mortgage, or an implied trust in the nature of a resulting trust arose to which the power to mortgage under the order of confirmation attached, and under which the trustee also had the implied power to mortgage for the preservation of the trust, are interesting questions, which we may not be required to completely answer in this case inasmuch as the appellant practically bases his entire case upon the proposition that the trustee, the Marion Mortgage Company, had no authority whatever to execute the mortgage herein sought to be foreclosed, and our inquiry into these questions need go no further in the present case than to determine the particular question urged by the appellant on this appeal. In this connection we might call attention to the fact that Section 20 of the trust deed, attached as an exhibit to the answer, provided that in case of resignation or re-

moval of the trustee the vacancy may be filled by the holders of the majority of the bonds by written instrument to be filed with the new trustee so named, and that such successor trustee shall have all the powers conferred by said instrument upon the original trustee, and that should the holders of the majority of the bonds fail to name the successor trustee within sixty days, the owner may name such successor. Thus there was no express or implied authority in the Marion Mortgage Company to name its successor as trustee under the trust deed. Nevertheless, it had express authority under paragraph five of the trust deed, to purchase the encumbered property at the foreclosure sale and that its receipt should be sufficient to discharge any purchaser for his purchase money. This provision contemplates that the trustee, if it purchased at all, should purchase for the bondholders at such judicial sale. The provisions of the trust deed were made a part of each bond. If, as was expressly provided, the trustee was authorized to purchase the property at judicial sale, circumstances might become such that it would be its absolute duty to do so, and we think the record in this case, in connection with the judicial notice which we have of the extreme deflation in real estate values which took place after the collapse of the boom of 1925 and the almost total lack of market for real estate which existed in Dade County at the time this sale took place, were such as to make it the duty of the trustee to bid in and purchase the incumbered property at the foreclosure sale for the bondholders. Vested with such express authority, and circumstances being such as to make it the duty of the trustee to aid in the property, it follows that there would be implied authority to do such things as might be necessary to complete the purchase and enter into possession and use of the property for the benefit of the bondholders. One of the things necessary to be done, as

shown by the motion for confirmation of the sale, was for the purchaser, the Marion Mortgage Company, to execute the mortgage herein sought to be foreclosed. The court was fully apprised of all of this when it granted the motion and confirmed the sale, and directed the master to convey the property to the Marion Mortgage Company.

Furthermore, Section 22 of the trust indenture, hereinabove quoted, provided that the trustee should receive reasonable compensation for the discharge of its duties and reimbursement for all legitimate expenses, including counsel fees, incurred by it, and all such fees, commissions and disbursements should constitute a first lien on the property and upon all sums in its hands. Thus the trustee already had a first lien on the property for all or most of the items for which the mortgage was executed in order to raise money to pay therefor. In addition to this, Section 7 of the trust deed gave the trustee the power, in case of default, to foreclose the trust deed in due form of law, and Section 8 provided that in case of sale, either under the power or by judicial decree, the proceeds should be applied by the trustee, first, to defray the expenses lawfully incurred by it, including its just and reasonable charges for its own services, and reasonable fees for its attorneys at law for services rendered in connection with the execution of the trust; and second, to the payment of all taxes, assessments, insurance charges, and all other proper charges upon the said premises and property. These payments were authorized to be made before any payments were made to the bondholders.

In such circumstances, the trustee, the Marion Mortgage Company, filed in the suit for the foreclosure of the trust deed executed by the Cortez Hotel Company a motion for the confirmation of the sale to it, and in the said motion it set forth that it had bid in the property in its individual

name at the sum of $160,000, but that the property had little market value at that time, that it would place the mortgage upon the said property for the purpose of paying the costs and charges, as set forth in the final decree, and establishing a small fund for repairs, insurance premiums, 1928 taxes, and other such incidental charges accruing against the property, and that the title to this property, subject to the said mortgage, would then be transferred, together with the remaining cash on hand, to the Trust Company of Florida, as trustee, for the benefit of the bondholders. The motion showed the necessity for this course of action. We need not repeat all the circumstances recited in the motion, including the inability of the trustee to advance its own funds for the payment of these items. Suffice it to say that under the circumstances stated in the motion we think the proposal therein, that if the bid was confirmed, the Marion Mortgage Company would place its five-year mortgage on the property for the purposes stated, and would then convey the property to the Trust Company of Florida as Trustee, subject to said mortgage, and that the trustee would then hold the property and manage the same for the benefit of the bondholders, was impliedly ratified and confirmed by the court when it granted the motion and confirmed the sale. It is very apparent from the record that if this plan had not been followed and the sale confirmed the property would have had to be resold, perhaps for less than enough to pay the taxes and expenses of foreclosure, or if not resold, the property would have soon been lost by tax deed. The fact that after the Trust Company of Florida took over the property, subject to the mortgage, it and its successors were not able to secure enough income therefrom to keep up the payments and pay off the mortgage by the time it fell due, is not the fault of the plan proposed by the Marion Mortgage Company, which plan ex-

tended the chances of the bondholders to get something out of this property for another five years. The failure to pay this mortgage as it became due may well have been caused, as suggested in the briefs, by the nationwide economic depression, which began soon after this mortgage was made and which played havoc with many well laid plans which were made to salvage something from the collapse of the Florida real estate boom of 1925, as suggested in one of the briefs in this case filed by the *Amicus Curiae*. But whatever caused the default in the payment of this mortgage, it would seem that, on the face of this record, the Liquidator of the Trust Company of Florida is not in a position to deny its validity.

The answer of the Liquidator, and the brief filed in his behalf, lay some stress upon the fact that the bondholders were not made parties defendant to the foreclosure of the original trust mortgage. This was not necessary, under the terms of the bonds and of the mortgage given to secure them, which bonds provided that the trust deed was made a part of each bond, and the trust deed expressly authorized the trustee to foreclose in case of default. Winer v. Trust Company of Florida, 98 Fla. 726, 124 So. 35. Nor are any of the parties to this case in a position to question the capacity of the Marion Mortgage Company to act as mortgage trustee under the trust deed executed by the Cortez Hotel Company, nor its corporate capacity to foreclose such mortgage. Brown v. Marion Mortgage Company, 107 Fla. 727, 145 So. 416.

It is true that the trust deed did not give the trustee express power to execute a mortgage on the trust property, as we have seen, but did give the trustee the power to foreclose the mortgage upon default, and to purchase at the foreclosure sale, and it also gave the power to take possession of the premises and manage the same and to use the rents

and profits in the upkeep of the property, the payment of taxes, insurance premiums and other necessary charges, or to "take such other steps as may be necessary and legal for the protection of such bondholders." Under the facts and circumstances shown by the answer itself, and the exhibits thereto, including the trustees motion for confirmation of foreclosure sale, we are of the opinion that the trustee had implied power, under the trust deed, to execute the mortgage sought to be foreclosed in this case, for the purposes stated in the motion for confirmation of sale, in order to protect the interests of the bondholders.

While the court, in its decree confirming the sale under the trust mortgage and ordering the master to make a deed to the trustee, did not expressly authorize the trustee to place a mortgage on the property, it impliedly granted such authority to the trustee in view of the fact that the trustee's motion fully apprised the court that if the court confirmed the sale, the trustee would have to execute such a mortgage and that after doing so it would then convey the title to the Trust Company of Florida, as trustee, for the benefit of the bondholders, and the court being thus fully advised, granted the motion and confirmed the sale.

In the June number of the American Bar Association Journal (Volume 20, No. 6, page 370) there appears an able article by Mr. Philip M. Payne, on the subject of "The Gold Clause in Corporate Mortgages," the first paragraph of which reads as follows:

"The modern corporate mortgage is usually in the form of a trust deed, with a power of sale, in which a trustee (usually a trust company) is named to take and hold the title of the mortgaged property for the benefit of the bondholders. The bonds are made negotiable so that they may be conveniently disposed of in the market, and the mortgage is, in effect, a contract between the corporation making

it and the trustee, as representing all persons who may become holders of the bonds secured by it. The trustee under a corporate mortgage is a trustee of an express trust as to the security—the incumbered property—but not as to the bonds or notes for they are not payable to the trustee. The trustee, named in a trust deed securing a bond issue, represents all of the bondholders in matters affecting the enforcement of the security and the administration of the trust property. Frequently the trust deed contains provisions respecting the right of individual bondholders to enforce payment. Nevertheless, there is a fiduciary relation between co-bondholders. Thus, the modern corporate trust deed is in many respects *sui generis.*"

Each of the legal propositions asserted in this paragraph are supported by copious citations in the footnotes, of decided cases, including several decisions of the Federal Supreme Court, among them being the case of Shaw v. Little Rock and Ft. Smith Railway Company, 100 U. S. 605, 25 L. Ed., 757, in which it was held that when everything is honestly done by the trustee, and the courts are satisfied that the rights of others have not been prejudiced to the advantage of the trustee, the simple fact of the trustee's being interested is not sufficient to justify the withholding of a confirmation of his acts. And in Richter v. Jerome, 123 U. S. 233, 31 L. Ed. 132, it was held that where a trustee acts in good faith, whatever binds him in any legal proceeding which he prosecutes to enforce the trust, to which the *cestuis que* trust are not actual parties, binds them; that whatever forecloses a trustee in the absence of fraud or bad faith, forecloses them. That to such a suit for foreclosure, the bondholders are not necessary parties; that they are represented therein by their trustees and are bound by the decree so long as it stands unreversed. See also Kent v. Lake Superior Shipping Canal, R. & I. Co., 144 U. S.

65, 36 L. Ed. 352. There is also a note on this subject in 16 L. R. A. N. S. 1007.

In the case of Miles v. Vivian, 79 Fed. Rep. 848, a case decided by the Circuit Court of Appeals, second circuit, it was said: "Among the implied duties of a mortgage trustee, one of the most imperative is to use requisite diligence to protect the security he has taken for the bondholders. Being the grantee in the trust deed, this duty of diligence requires him to exercise the care which the prudent grantee would deem to be necessary for his own protection; and in this behalf we do not doubt that he should see to it that the trust deed is duly recorded, so that no liens of a subsequent date will take and obtain priority over the mortgage lien." See also Jones on mortgages, Volume 3, 8th Ed., Section 2292.

In Fletcher on Corporations, Volume 3, Section 1396, it is said that it is well established that the trustee has implied power to bid at foreclosure sale for the protection of the bondholders to an amount equal to the principal and interest due on the mortgage, where the property is worth that much or more, and that he may be authorized by the foreclosure decree to purchase. In the same section it is also said that "if the trustee buys in the property at foreclosure sale, he undoubtedly has the right to sell it to the best advantage. Citing Nat. Aug. Lumber Company, v. Scranon Trust Company, 240 Pa. 500, Ann. Cas. 1915 A. 235, 87 Atl. 843, whch case is quoted from at some length in appellant's brief. Cook on Corporations, 7th Ed. Section 885, also says that a trustee has implied power to bid in the property at a foreclosure sale in behalf of the bondholders. To like effect, see C. J. 14 A, 716, wherein it is also said that "where the trustee of a corporate mortgage buys the trust property at a foreclosure sale he will be presumed to buy and hold for the benefit of the trust."

On this question of the implied power and duty of a trustee to take such steps as are reasonably necessary to protect the trust estate, including the implied power to bid at the foreclosure sale, or to mortgage the property, see also Lueft v. Lueft, 9 Am. & Eng. Ann. Cas., 639, 642, 29 Wis. 109; James v. Cowing, 82 N. Y. 449; Kerrison v. Stewart, 93 U. S. 155, 160, 23 L. Ed. 845; Central 482, 32 L. Ed. 985; Mareck v. Minneapolis Trust Co. 74 Minn. 538, 77 N. W. 428; 65 Trust Co. of N. Y. v. Seasongood, 130 U. S. 488, C. J. 694, 787, 26 C. J. 1304; Robinson v. Robinson 105 Me. 68, 72 Atl. 883, 134 A. S. R. 537; Yerkes v. Richards, 170 Ia. 346, 32 Atl. 1089, 1096; Roberts v. Hale (Ia.) 99 N. W. 1075, I Ann. Cas. 940, and Gilbert v. Penfield (Cal.) 56 Pac. 1107. And in Walker v. Close, 98 Fla. 1103, 125 So. 521, it was held that "a power of sale need not be conferred on a trustee in direct or express terms, but may be implied from the purpose of the trust."

While the weight of authority appears to uphold the view we take of this case, there are some cases which hold that the trustee cannot mortgage the trust property unless power to do so is expressly given him by the trust instrument, or necessarily implied from its terms. See 26 R. C. L. 1303, paragraph 156, and 65 C. J. 785, and cases cited. But see, per contra, 26 R. C. L. 1304, 28 Am. & Eng. Encyc. of Law 982-3, and 65 C. J. 787. Many of the cases supporting the rule that the power to mortgage must be expressly conferred by the trust instrument are cases involving testamentary trusts, or trusts vested for the benefit of named beneficiaries, and also dry or naked trusts. Appellant cites the case of Haimovitz v. Hawk, 80 Fla. 272, 86 So. 668, but, there is such a great difference between the facts and circumstances of that and those in the present case as to render it inapplicable here. Our holding here is not in conflict with Haimovitz, v. Hawk.

Paragraph 157 of 26 R. C. L. 1304, reads in part as follows:

"Power to mortgage the estate will be implied when reasonable and necessary for the execution of the trust, and in the absence of any execution of the trust, and in the absence of any expression of a contrary intent, although the instrument does not expressly confer such power. Accordingly, where a trustee is authorized to take charge of, manage, and control the property, and in his discretion to sell or dispose of it when he shall deem it to be for the best interest of the beneficiary, it has been held that he had implied authority to execute a mortgage on the property for the purpose of obtaining money with which to make improvements, especially where the improvements will make the property more productive and of greater value to the beneficiary."

Even though the trustee bought in its corporate name only, it must be presumed to have bought and taken title to the trust property for the benefit of the bondholders. Nay Aug Lumber Co. v. Scranton Trust Co., *supra;* Church. v. Winton, (pa.) 46 Atl. 377. The trustee cannot divest himself of the trust by purchasing the trust estate in his own name at a foreclosure sale brought about by himself, for the benefit of the bondholders. He thereby takes the legal title to the property for the benefit of the bondholders, 28 Am. & Eng. Encyc. of Law, 952, who by such purchase became the equitable owners of the property.

While a trustee, vested with the legal title, may, in some cases, by conveying the estate to a purchaser without notice, terminate the trust, a purchaser with notice would take the estate impressed with the trust. We think that the Trust Company of Florida is shown by the facts stated in the answer to have taken over the trust estate with full notice of the trust or equitable interest in favor of the bondholders. (28 An. & Eng. Encyc. of Law. 953) and also with

full notice of appellee's mortgage, the deed by the trustee to it having been made expressly subject to said mortgage, and by accepting said deed the said Trust Company took the property impressed with a trust in favor of the bondholders and subject to the mortgage, neither of which it either endeavored to, nor could, repudiate or deny and at the same time hold the property. The Liquidator of said Trust Company, under the facts of this case, merely took over such title, rights and obligations pertaining to the trust property as the Trust Company of Florida held and was bound by. As a general rule, a trust is not terminated, except with the consent of all which have an interest or until the purposes of the trust are accomplished. See 28 Am. & Eng. Encyc. of Law, 953, 65 C. J. 349-367, and cases cited. We are therefore of the opinion that the appellant Liquidator holds this property in trust for the benefit of the bondholders, subject, however, to appellee's mortgage, the validity of which he is estopped to deny.

That trustees are entitled to reasonable compensation for their services, and reimbursement out of the trust fund for necessary costs and expenses, including attorney's fees for defending the trust estate and enforcing the trust for the benefit of the *cestuis que* trust, has been recognized in this State. Bay Biscayne Co. v. Baile, 73 Fla. 1120, 75 So. 860. See also 65 C. J. 723, 724, 729; Perry v. Trusts, 7th Ed., Section 485; Fletcher on Corporations, Section 1356; Gisborn v. Charter Oak Life Ins. Co. 142 U. S. 326, 35 La. Ed. 1029. The trust instrument in this case, as we have seen, gave the trustee, the Marion Mortgage Company, a lien for all advances made by it for the benefit of the trust, such as for taxes, insurance, attorney's fees, etc., which lien was given priority over the claims of bondholders.

The facts in this case are quite different from those involved in the case of Flagler Finance Corporation v. Ther-

rell, as Liquidator, now pending in this Court on rehearing. In that case one of the bondholders appeared at the foreclosure sale and made a cash bid of $11,000.00 as against the Liquidator's bid of $12,000.00, and there was, under the facts, a question of which was the higher and better bid.

For the reasons above pointed out, we hold that those portions of the answer moved to be stricken presented no sufficient reasons for holding the appellee's mortgage invalid or void, and that the order appealed from is free from error, and must be affirmed.

Affirmed.

DAVIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.

ELLIS, J., dissents.

ELLIS, J. (dissenting).—The postulate upon which the conclusion of the majority opinion rests is the statement that "under paragraph 5 of the trust deed" the Trustee, G. L. Miller Bond & Mortgage Company (subsequently named Marion Mortgage Company), had express authority to "purchase the encumbered property at the foreclosure sale and that its receipt should be sufficient to discharge any purchaser for his purchase money. This provision contemplates that the trustee, if it purchased at all, should purchase for the bondholders at such judicial sale." "If, as was expressly provided, the trustee was authorized to purchase the property at judicial sale, circumstances might become such that it would be its absolute duty to do so, and we think the record in this case, in connection with the judicial notice which we have of the extreme deflation in real estate values which took place after the collapse of the boom in 1926 and the almost total lack of market for real estate which existed in Dade County at the time this sale took place, were such as to make it the duty of the trustee to

bid in and purchase the incumbered property at the fore-closure sale for the bondholders."

⸱ It is apparent from a careful reading of paragraph 5 of the trust deed that a distinction is made between the "Trustee" and "any person or persons acting in their behalf" at any sale of the property. If the meaning of the paragraph is as the opinion holds, that the Trustee as such, that is to say acting for the bondholders, had express authority to purchase the property at the forclosure sale, would his own receipt as Trustee to himself as Trustee be required to discharge him for the purchase money in order to complete the judicial record of the sale? In which case what would become of the costs and attorneys' fees allowed by the decree of foreclosure to be paid from the proceeds of the sale?

⸱ In those circumstances would it become necessary for the Court, assuming it had the power, to create another trust as the opinion holds in which the Trustee for the bondholders under the original trust deed should place a mortgage upon the property in order to raise money to pay court costs and attorneys' fees in the foreclosure proceedings, needed repairs of the property and taxes past due and accruing in the years to come, and thus by such a legal metamorphosis convert the status for the original bondholders from that of creditor to that of debtor?

If the Trustee as such was expressly authorized to purchase the property and it became necessary in the circumstances to execute the mortgage as the confirmation order of the sale provided, then the act of the Trustee became the act of the original bondholders, now the *cestui que trustent* of the trust property, and the new obligation became the personal obligation of each of the *cestuis que trustent* of the new trust, so that if another emergency arose, such as the collapse of another boom, or the presence of a malicious fly, of a south sea tornado, or failure of more banks, the

Court might find it necessary in the circumstances to create another trust or enter a deficiency decree for the amount of the latest debt against so many of the original bond-holders as the process of the Court should reach.

The opinion would in this State be regarded as authority for a judicial pyramiding of trusts in which by a kind of legal legerdemain an original creditor becomes, on account of his ownership of a bond, a debtor on a personal liability unless the Chancellor in the exercise of a sort of realistic conception of law exerts his paternalistic power and preserves the helpless owner of a bond from such a hardship which the Chancellor did not provide for in the instant case.

The law is not an empirical science. It is what the courts administer, not what the courts do in given cases. If it were not so it would be imposible for lawyers to advise their clients. Men could not know their rights and their correlative duties until some court in a given case, viewing the so-called emergencies which may have arisen, prescribes for the parties a rule of conduct which the exigencies seem to require.

I am not a member of such a school of exaggerated free law. Even Mr. Justice Holmes, the brilliant exponent of so-called realistic law, admits that courts do not "inquire what the legislator meant, but only what the statute means." The same formula is applicable to contracts. In construing a contract, where construction is necessary, it is not what the parties might have intended in view of the existence of some so-called emergency, like a shrinkage in value of the subject matter of the contract, but what the words deliberately used in the document indicate the purpose of the contracting parties to have been.

There is no provision in the original trust deed from the Cortez Hotel Company to the Miller Bond & Mortgage Company (later named Marion Mortgage Company), dated

July 1, 1924, securing the payment of the seven hundred and twenty-seven bonds, authorizing the Trustee to sell the property, or in the event of foreclosure to purchase it at judicial sale as Trustee and then to encumber the acquired property by a mortgage to raise funds to pay court costs, solicitors' fees in the foreclosure proceeding, accrued and accruing taxes and necessary repairs, not to continue the business of the Cortez Hotel Company, nor to dispose of the property as acquired.

If the power was not contained in the original trust deed what power had the court to create a new trust vesting in the Trustee the power to create such a burden upon the original bondholders, now become the *cestuis que trustent* of a new trust and equitable owners of the property? It exists only in the conception of those who because of the so-called emergencies arising after the original transaction conceive that a gap exists between the original purpose of the contract and the practical application of that purpose to present conditions, which requires the ingenuity of the Court to provide the material to fill it. In such case is not there danger of the suggestion that such gap-filling process is formulated for the purpose of the concrete judicial decision? The law is not a body of facts. It is a body of rules. It is a rational, not an empirical science.

The case of Flagler Finance Corporation, v. Therrell, not yet reported, in which a petition for a rehearing has been filed, is authority for the proposition that the Trustee's powers are defined and limited by the terms of the trust deed. See also Snyder v. Collier, 85 Neb. 552, 123 N. W. Rep. 1023, text 1025; Sampson v. Mitchell, 125 Mo. 217, 28 S. W. Rep. 768; Griffin v. Blanchar, 17 Cal. 71; Owen v. Reed, 27 Ark. 122; also Haimovitz v. Hawk, 80 Fla. 272, 85 South. Rep. 668; Marx v. Clisb, 126 Ala. 107, 28 South. Rep. 388, 65 C. J. 785, 786; 20 R. C. L. 1303.

The above authorities are cited in the excellent brief by appellant's solicitor but are not regarded by the majority opinion as persuasive of appellant's contention, on the ground that some of them related to testamentary trusts, as if there is one law for testamentary trusts and another for express trusts created by deed. The opinion states that the "trust involved in this case undoubtedly began as an express trust under the trust deed or mortgage securing a bond issue on the Cortez Hotel property" and then proceeds to decide that the "trust deed did not give the trustee express power to execute a mortgage on the trust property, as we have seen, but did give the trustee the power to foreclose the mortgage upon default."

It also holds that the trust deed gave the Trustee power as such to purchase at foreclosure sale, which is a mere construction of the terms in which the power is supposed to be contained and to which construction I do not agree. The opinion then holds that not the powers contained in the trust deed but the "facts and circumstances shown by the answer" and the "trustee's motion for confirmation of foreclosure sale" created an implied power to execute the mortgage. Thus conditions subsequently happening to the execution of the trust deed bring into existence a power not conferred by the creator of the trust.

Thus a new trust is established created by the Court which deems the "facts and circumstances" sufficient to fill the gap between the absence of the power to mortgage and the execution of a mortgage to effect the legal transmutation of bondholders from creditors to debtors, from the holder of a bond secured by a mortgage to tenants in common of the equitable estate of the mortgaged property.

I am unable to follow the reasoning of the majority or to concur in such application of the doctrine of free law.