294 So.2d 11 (1974)
Ernice Shirley Weinkle PRESTON, Appellant,
v.
CITY NATIONAL BANK OF MIAMI, a National Banking Corporation, et al., Appellees.
No. 73-328.
District Court of Appeal of Florida, Third District.
March 26, 1974.
Rehearing Denied May 20, 1974.
Snyder, Young, Stern & Tannenbaum, North Miami Beach, for appellant.
Frates, Floyd, Pearson, Stewart, Proenza & Richman, Heller & Kaplan, Miami, for appellees.
Before CARROLL and HENDRY, JJ. and DREW, E. HARRIS, Associate Judge.
*12 DREW, Associate Judge.
In the previous appearance of this case,[1] we reversed the judgment dismissing the complaint with prejudice. First, because "... the complaint, on its face [was not] vulnerable to a contention of laches on motion to dismiss." [Emphasis supplied.] We said, "If there are facts and circumstances which should so require, they are not shown on the complaint, and if they exist would be matters to be presented in defense of the action by answer." Second, the allegations of the complaint that such assignment (of plaintiff's right to receive the corpus) had been made by her without legal advice and without comprehending the consequences thereof; that the same had been obtained by the undue influence of her brother (trustee), and that such action of the trustee constituted a breach of confidential and fiduciary relations. These and other reasons delineated were sufficient facts, if proven, upon which relief could be granted. Third, a justiciable question was presented as to the validity of a voluntary transfer or assignment by the beneficiary of a spendthrift trust of her right to receive benefits provided for therein.
The case was returned to the able trial judge who heard all the testimony, considered all the evidence, and entered the final judgment. Pertinent portions appear in the footnote.[2]
*13 We are in complete accord with the trial judge's conclusion, based on the evidence produced before him at the trial that the lengthy passage of time, (nearly 10 years) between the date of her signature to the amendment to the trust indenture and her repudiation of it, was detrimental to the defendant. Moreover, the plaintiff, during this long period of time, accepted payments of income produced by the whole corpus and otherwise, by her acts, ratified the amendment. The findings of the trial judge that the amendment was clearly understood and approved by the plaintiff, and that she knew what she was doing, that there was no fraud or overreaching, is under elemental rules, binding on this Court where supported by competent substantial evidence. We not only find that quality of evidence present in this record but we completely concur in the trial judge's estimate of it.
This leaves the sole pertinent question posed by appellant's Points I and V, viz:
"I. WHETHER A BENEFICIARY'S ASSIGNMENT OF HER RIGHTS TO RECEIVE BENEFITS PROVIDED FOR HER IN A SPENDTHRIFT TRUST IS VALID UNDER FLORIDA LAW."
"V. WHETHER THERE WAS AN ADEQUATE CONSIDERATION TO SUPPORT THE VALIDITY OF THE BENEFICIARY'S ASSIGNMENT."
We will discuss both points together.
Appellant's argument is that, even assuming the assignment was knowingly, freely and voluntarily made and thoroughly understood by the appellant, the Trust, being a spendthrift trust, could not lawfully be so amended. We do not agree. It is conceded by the parties that the amendment was executed and the original trust indenture changed[3] only to the extent of assuring to the beneficiary income therefrom during her life. Such a plan is far more consistent with the purpose of a spendthrift trust than the original one. Such a trust is exactly what the name implies. Usually conceived by parent, or relatives, or friends concerned over the irresponsible propensities of a loved one, or their inability to cope with the problems of earning a livelihood and to prevent them becoming public charges, these documents have been long recognized by the courts. After the benefits of such a trust pass to the possession of a beneficiary, the creator's power to protect the beneficiary against himself or herself is gone. And so it is that the provision here in the original trust is with reference to corpus, to say the least, somewhat inconsistent with the purpose usually prompting such arrangements. It probably was because of the desire of the creator, and of the beneficiary, years after the trust was originally written to assure the beneficiary financial stability during her life (so far as possible), that the changes were made. Subsequent events, including four marriages, established the wisdom of the change.
*14 But, appellant argues, the original plan is irrevocable, and any attempt of the beneficiary to change it is invalid. In support of this thesis is quoted the statement in 24 A.L.R.2d § 4 at 1109 and the Waterbury case.[4] The Waterbury case is inapposite. It related only to alienation of income, and there were other factors which clearly separate it from the problem here. The A.L.R.2d quotation, supra, has reference to the "assignment of the right to future income".
If such right could be assigned by a beneficiary of a spendthrift trust, the very purpose of such a trust would be destroyed. There can be no doubt of the validity of this premise. But here, we are dealing, not with "alienation of future income," but the right to receive future corpus[5]  two very different concepts in this area.
The terms of a trust may be modified if the settlor and all the beneficiaries consent. Having the power to terminate, they obviously have the power to create a new trust or to modify or change the old.[6] In Florida, this principle has long been recognized.[7]
What we have said about trusts generally applies to that type of trust characterized as spendthrift trusts. There is no reason in logic or law to create distinctions. The word "spendthrift" merely describes its nature, as would the words "charitable", "educational" or other similar words employed in the field of trusts. Ordinarily, the principal purpose of a spendthrift trust is to protect the beneficiary against debtors. That is the reason for the well nigh universal provision against alienation of any future right to the benefits flowing therefrom. Here, this purpose has been assured by the amendment to an even greater degree than was arranged in the original instrument and all with the consent of those affected. This is all that the law requires.
No point is made in this appeal as to the trial court's denial of the prayer for an accounting from the bank.
Affirmed.
NOTES
[1] Preston v. City National Bank of Miami, 258 So.2d 283 (3 Fla.App. 1972).
[2] "1. That on March 28, 1946, ESTHER WEINKLE, created an inter vivos, irrevocable trust, naming the late LOUIS HEIMAN, Attorney, as Trustee.

"2. Named as beneficiaries of the trust were the trustor's daughter, ERNICE SHIRLEY WEINKLE PRESTON, the plaintiff, and as contingent beneficiaries the daughter's living descendants, and if none, the trustor's son, JULIAN WEINKLE, and if not living to JULIAN WEINKLE's living descendants.
"3. In this action the plaintiff complains that her brother, JULIAN WEINKLE while serving as a successor trustee to LOUIS HEIMAN, prevailed upon and persuaded Plaintiff to execute an instrument entitled "RELEASE AND ASSIGNMENT BY ERNICE SHIRLEY WEINKLE OF RIGHTS TO PRINCIPAL". Plaintiff claims that such assignment had been made by her without benefit of legal advice, and without comprehending the consequences thereof, and that she had not been advised by her brother of the legal significance of her execution of the said instrument. Plaintiff further alleges that she had been persuaded and unduly influenced by her brother who was then trustee, and that such action of the trustee constituted a breach of confidential and fiduciary relationship owed by the trustee to the plaintiff beneficiary, and as a result plaintiff prays for cancellation of the instrument. These allegations the Court finds to be untrue.
"4. Ten (10) years elapsed from the time of the execution of the aforesaid document by the plaintiff before she filed this action. The defendant, JULIAN WEINKLE, pleaded affirmative defense of laches, and the Court finds that the lengthy passage of time was detrimental to the Defendant since three key witnesses had died, and a fourth witness, who may have been beneficial to the defendant, also died.
"5. The Plaintiff is a smart, well educated, and strong-willed individual, and obviously knew what she was doing when she executed the document heretofore referred to, and also when she previously executed another document identical in nature when a gift tax problem arose. It was apparent to the Court that the Plaintiff, concerned about her marital problems, since she is now in her fourth marriage, did not want a husband to be able to reach any of her funds, and wanted the security of income that would be provided by the trust.
"6. The testimony shows that the Plaintiff freely and voluntarily executed the documents without any coercion or influence on the part of the Defendant, JULIAN WEINKLE, and the testimony further shows that the Defendant, JULIAN WEINKLE, capably administered the trust without compensation for the benefit of the plaintiff, ERNICE SHIRLEY WEINKLE PRESTON.
"7. The testimony further shows that the astute management of the trust by the bank is producing substantial income to the Plaintiff. The testimony further shows that the Defendant, CITY NATIONAL BANK, has at all times cooperated with the Plaintiff and her Accountant, and has the books and records available for inspection at all times, and has accounted to the Plaintiff at all times upon her request.
"8. The testimony further reveals that a full and complete disclosure and discussion was held between ESTHER WEINKLE, ERNICE SHIRLEY WEINKLE PRESTON, and JULIAN WEINKLE, concerning the decision of the Plaintiff to modify the trust, and it was agreed by all that it was in the Plaintiff's best interest to execute the documents in question.
"Upon the foregoing findings of facts and the entire record before it, the Court does thereupon
"ORDER AND ADJUDGE that:
"1. The equities are with the defendants and against the Plaintiff, and that the Plaintiff is not entitled to an accounting.
"2. That a Final Judgment be and the same is hereby entered in favor of the Defendants, JULIAN WEINKLE, individually, and as parent and next friend of JEANNE WEINKLE, WILLIAM WEINKLE, ANDREW WEINKLE, THOMAS WEINKLE, JAMES WEINKLE, CATHY WEINKLE, minors, and MARTIN WEINKLE, and CITY NATIONAL BANK OF MIAMI, a national banking corporation, and against the Plaintiff ERNICE SHIRLEY WEINKLE PRESTON, who shall take nothing by this suit and shall go hence without day."
[3] The only change was with reference to the right of the beneficiary to receive corpus  one third at age 25, one third at age 35, and one third at age 45. Income from the trust was to go to the beneficiary for her life with corpus to her heirs, if any, and if none to her brother or his heirs.
[4] Waterbury v. Munn, 159 Fla. 754, 32 So.2d 603 (1947).
[5] There can be no doubt whatsoever as to the right of the beneficiary to transfer the first one third of the corpus to the trust. At the time she did so she had the present right to receive it and therefore could do with it as she wished.
[6] Scott on Trusts, Vol. IV (3rd Ed.) at 338. Also see Botzum v. Havana Nat. Bank, 367 Ill. 539, 12 N.E.2d 203 (1937); and Commissioner of Internal Revenue v. Bacher, 102 F.2d 500 (6th C.C.A. 1939). To the same effect, Restatement Trusts 2d § 338(1) at 167.
[7] Smith v. Massachusetts Mut. Life Ins. Co., 116 Fla. 390, 156 So. 498 (1934).