LaROSE, Judge.
Daniel Peck, co-trustee of the Irrevocable Trust of Constance P. Simantob a/k/a Constance L. Peck (CLP Trust), appeals the trial court’s order terminating the CLP Trust. We have jurisdiction. See Fla. R. App. P. 9.030(b)(1)(A). We affirm.
Bernard Peck, Constance Peck’s father, executed a last vrill and testament that devised funds to a marital trust for the benefit of his wife, Marjorie Peck. Upon Marjorie’s[1] death, the trustee was to transfer any remaining trust assets to a residual trust for distribution equally to Bernard’s children, Constance and Daniel Peck, in separate trusts established by each of them.
In December 1992, Bernard, a lawyer, prepared the CLP Trust for Constance and funded it with gifts he made to her over a period of years under the Florida Uniform Transfers to Minors Act. See §§ 710.101-.126, Fla. Stat. (Supp.1992). Constance was the grantor/settlor and co-trustee with Bernard of the CLP Trust. Daniel was designated as successor trustee. The CLP Trust provided that, during Constance’s life, the trustees were to pay all income to her. The CLP Trust gave Constance power of appointment to distribute any remainder in a last will and testament. The CLP Trust was “irrevocable and shall not be subject to amendment, and no portion of the Trust Estate may be withdrawn from the operation of this Trust except in accordance with the terms herein before set forth.”
*588 The CLP Trust provided that Constance had the right to receive five thousand dollars per year from the trust principal, upon written request to the co-trustee, until the age of fifty. From age fifty to age fifty-five, the amount would be ten thousand dollars, and from age fifty-five until death, the amount was fifteen thousand dollars. Although the CLP Trust included a spendthrift clause, it included no language prohibiting Constance from withdrawing funds to make loans or gifts to anyone other than her descendants. It did not allow the co-trustee to withhold income distributions if the income was more than the co-trustee deemed to be in Constance’s best interests. Although the CLP Trust contained terms not necessarily consistent with the provisions of his will, Bernard transferred the initial assets into the CLP Trust, recognizing that it would later receive his residual trust assets. Those assets went into the CLP Trust upon Bernard’s death in 2009. Upon Bernard’s death, Daniel became co-trustee.
In her last will and testament, Constance exercised her power of appointment to distribute the CLP Trust remainder to her three children. The power of appointment allowed her to represent and bind contingent beneficiaries. See § 736.0802, Fla. Stat. (2012).
In 2012, Constance filed a petition to terminate the CLP Trust. Her children agreed to the termination. Daniel, as co-trustee, objected because Constance might unwisely dissipate the assets. Our record suggests that in crafting his estate plans, Bernard, too, had concerns about Constance’s ability to maintain financial stability. Daniel also argued that the trial court could not terminate the CLP Trust because under section 786.04113, Florida Statutes (2012), the trust’s purposes remained unfulfilled.[2] Unpersuaded by Daniel’s arguments, the trial court terminated the CLP Trust. The trial court observed that section 736.04113 does not limit the trial court’s common-law authority to terminate a trust. See § 736.04113(4) (“The provisions of this section are in addition to, and not in derogation of, rights under the common law to modify, amend, terminate, or revoke trusts.”).
The order before us, citing Preston v. City National Bank of Miami, 294 So.2d 11 (Fla. 3d DCA 1974), states that Florida common law requires the trial court to allow modification or termination of a trust if the settlor and all beneficiaries consent, *589 even if the trust is irrevocable and even if the trust’s purposes have not been accomplished.
Preston predates the enactment of statutes providing for both judicial and nonjudicial modification of irrevocable trusts.[3] The facts are straightforward. Esther Weinkle created an irrevocable trust. Id. at 12 n. 2. She named her attorney as trustee, designated her daughter, Ernice Weinkle Preston, as beneficiary, and named as contingent beneficiaries Ernice’s daughter, then the daughter’s living descendants, then Esther’s son, Julian Wein-kle, then the son’s living descendants. Id. The trust provided that the beneficiary would receive trust income periodically, plus one third of the corpus at age 25, one third at age 35, and one third at age 45. Id. at 13 n. 3. Subsequently, Ernice released her rights to the trust corpus, which would pass to contingent beneficiaries at her death; she retained income distributions during her life. See id. at 12 n. 2. Years later, Ernice filed a complaint alleging that Julian, who was then a trustee, had unduly influenced her to release her rights. Id. at 12. She asked the trial court to cancel the release. Id.
The trial court found no undue influence. Id. Rather, beset by marital problems, Ernice sought the security of the trust income without her husband being able to reach her funds. Id. Esther, Ernice, and Julian all agreed at that time she signed the release that it was in her best interest to do so. Id. The trial court agreed. Id.
On appeal, the Third District affirmed the trial court’s finding that there was no undue influence. Id. at 13. The question remained whether a spendthrift trust beneficiary could assign her right to receive trust benefits. Id. The court recognized that “[t]he terms of a trust may be modified if the settlor and all the beneficiaries consent. Having the power to terminate, they obviously have the power to create a new trust or to modify or change the old.” Id. at 14; see Smith v. Mass. Mut. Life Ins. Co., 116 Fla. 390, 156 So. 498 (1934). The court held that the amendment was valid because the settlor and all beneficiaries consented, the trust modification assured Ernice income during her life, which was more consistent with the purpose of a spendthrift trust than the original trust terms, and subsequent events, including four marriages, established that the modification was in Ernice’s best interests. Preston, 294 So.2d at 13, 14.
Here, Daniel argues that the trial court erred in terminating the CLP Trust before the section 736.04113(1) termination requirements had been met and allowing a principal distribution not in accord with CLP Trust provisions. He relies principally on Bellamy v. Langfitt, 86 So.3d 1170 (Fla. 3d DCA 2012). In that case, Robert Bellamy, as settlor, created a trust naming himself, Northern Trust, and four other individuals as co-trustees. Id. at 1171. Paragraph 2 of the Bellamy Trust provided that “[i]f the corporate Trustee fails or ceases to serve, the remaining individual Trustees or Trustee shall choose a successor corporate Trustee, so that there shall always be a corporate Trustee after the Settlor ceases to serve.” Id. Paragraph 18 provided, “[T]o the extent permitted by law, I prohibit a court from modifying the terms of this Trust Agreement under Florida Statutess. 7374031(2) [4] or any statute of similar import.” Id. at 1173.
*590 After Mr. Bellamy died, his adult daughters, who were among the cotrustees, agreed with Northern Trust to allow Northern Trust to resign as trustee and to be replaced with a corporate custodian to hold Bellamy Trust assets. Id. at 1172. The daughters filed a petition for court approval of this agreement. Id. Mrs. Bellamy, also a co-trustee, objected, arguing that Northern Trust must be replaced with another corporate co-trustee because the trust purposes remained unfulfilled. Id. at 1171-73. The trial court granted the daughters’ petition and approved the agreement because (1) it was in the beneficiaries’ best interests and (2) the “ ‘purpose of having a corporate trustee is no longer served because the Trust is substantially administered.’ ” Id. at 1174-75.
On appeal, the Third District reversed and reinstated Northern Trust as corporate co-trustee. Id. at 1175. It held that the trial court erred in modifying paragraph 2. Id. First, paragraph 18 prohibited judicial modification, even in the beneficiaries’ best interests. Id. see § 737.4031(2)(c)(2) (repealed 2008) (stating that subsection (2) allowing trial court modification of trust in beneficiaries’ best interests does not apply where trust terms expressly prohibit judicial modification). Second, competent substantial evidence did not support the trial court’s finding that the trust had been substantially administered because “more than routine, ministerial functions remain[ed].” Id. Significantly, Bellamy dealt with statutory judicial modification, not common law modifi *591 cation by consent of the settlor and all beneficiaries as considered by Preston.
Like Bellamy, other cases upon which Daniel relies are inapposite because none involved termination of a trust by agreement of the settlor and beneficiaries. See Bacardi v. White, 463 So.2d 218 (Fla.1985) (holding spendthrift trust disbursements may be garnished to enforce court-ordered alimony); Byers v. Beddow, 106 Fla. 166, 142 So. 894 (1932) (holding testamentary trust not terminable because deceased set-tlor’s intent was to control disbursements to beneficiary until her death, and contingent beneficiaries’ sisters consent was irrelevant because they had no interest to give up until beneficiary died without children); Schwarzkopf v. Am. Heart Ass’n of Greater Miami, 541 So.2d 1348 (Fla. 3d DCA 1989) (holding trial court had no authority to terminate testamentary trust prematurely where settlor’s intent was to postpone corpus distribution for ten years); Featherston v. Tompkins, 339 So.2d 306 (Fla. 3d DCA 1976) (holding trust termination improper where distribution condition that all child beneficiaries reach age twenty-one had not been fulfilled; trust purpose had not been accomplished and minor beneficiary had no capacity to agree); Fla. Nat’l Bank & Trust Co. at Miami v. Blake, 155 So.2d 798 (Fla. 3d DCA 1963) (holding spendthrift trust termination improper because all parties were not before the court and did not consent); First Nat’l Bank of Miami v. Kerness, 142 So.2d 777 (Fla. 3d DCA 1962) (holding settlor/beneficiary not entitled to dissolve irrevocable spendthrift trust where contingent beneficiaries did not agree, object of trust had not been accomplished, all interests had not vested, trustee did not agree, and infant child was not before court).
If Bernard had created the CLP Trust as settlor, he probably could have structured it so that it could not be modified by this common law method after his death or if he objected while living. Because his will anticipated that Constance would create her own trust to receive his residual trust assets and she was the grantor/set-tlor, she could modify or terminate the trust, with the beneficiaries’ consent, even if it defeated her father’s intent as to how she could access his assets once distributed to the CLP Trust.
The trial court correctly relied on Preston. Pursuant to subsection (4), section 736.04113 does not abrogate the common law. Accordingly, termination of the CLP Trust was not improper.
Affirmed.
VILLANTI and CRENSHAW, JJ., Concur.

. For ease of reference and to avoid confusion, we will refer to each of the Peck family members by their respective first names.

. Section 736.04113 provides, in pertinent part, as follows:
(1) Upon the application of a trustee of the trust or any qualified beneficiary, a court at any time may modify the terms of a trust that is not then revocable in the manner provided in subsection (2), if:
(a) The purposes of the trust have been fulfilled or have become illegal, impossible, wasteful, or impracticable to fulfill;
(b) Because of circumstances not anticipated by the settlor, compliance with the terms of the trust would defeat or substantially impair the accomplishment of a material purpose of the trust; or
(c) A material purpose of the trust no longer exists.
(2) In modifying a trust under this section, a court may:
[[Image here]]
(b) Terminate the trust in whole or in part;
[[Image here]]
(3) In exercising discretion to modify a trust under this section:
[[Image here]]
(b) The court shall consider spendthrift provisions as a factor in making a decision, but the court is not precluded from modifying a trust because the trust contains spendthrift provisions.
(4) The provisions of this section are in addition to, and not in derogation of, rights under the common law to modify, amend, terminate, or revoke trusts.

. See W. Michael Parrott, "Pitfalls and Minefields in Estate Planning,” BEP FL-CLE 2-1 § 2.58 (2012) (citing ch. 2000-245, § 7, [at 2395-98,] Laws of Fla.).

. Section 737.4031, Florida Statutes (2002), the predecessor of section 736.04113, provided, in pertinent part, as follows:
*590 (1) If the purposes of a trust have been fulfilled or have become illegal or impossible to fulfill or, if because of circumstances not known to or anticipated by the settlor, compliance with the terms of the trust would defeat or substantially impair the accomplishment of á material purpose of the trust or, if a material purpose of the trust no longer exists, upon the application of a trustee of the trust or any beneficiary a court at any time may modify the terms of a trust which is not then revocable to:
(a) Amend or change the terms of the trust, including terms governing distribution of the trust income or principal, or terms governing administration of the trust;
(b) Terminate the trust in whole or in part;
(c) Direct or permit the trustee to do acts that are not authorized or that are prohibited by the terms of the trust; or
(d) Prohibit the trustee from performing acts that are permitted or required by the terms of the trust.
(2) Upon the application of a trustee of the trust or any beneficiary, a trust which is not then revocable may be modified at any time by a court as provided in subsection (1), and without regard to the reasons for modification provided in subsection (1), if compliance with the terms of the trust is not in the best interest of the persons having a beneficial interest in the trust.
(a) The court shall exercise its discretion to order a modification of the trust under this subsection in a manner that conforms to the extent possible with the intention of the settlor, taking into account the current circumstances and best interests of the beneficiaries.
[[Image here]]
(c) This subsection shall not apply to a trust created after December 31, 2000, if:
[[Image here]]
2. The terms of the trust expressly prohibit judicial modification.
(3)In exercising its discretion to order a modification of a trust under this section, the court shall consider the terms and purposes of the trust, the facts and circumstances surrounding the creation of the trust, and extrinsic evidence relevant to the proposed modification.
[[Image here]]
(5) The court shall consider spendthrift provisions as a factor in making a decision whether to modify a trust under this section, but the court is not precluded from exercising authority to modify the trust because the trust contains spendthrift provisions.
[[Image here]]
(7) The provisions of this section are in addition to, and not in derogation of, rights under the common law to modify, amend, or revoke trusts.